# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-30183

SETH A. BECKER

Plaintiff-Appellant

v.

TIDEWATER INC.; TWENTY GRAND OFFSHORE INC.; TIDEWATER
MARINE LLC; PENTAL INSURANCE COMPANY LTD; CERTAIN
UNDERWRITERS AT LLOYDS INSURANCE CO.

Defendants-Appellees

v.

BAKER HUGHES INC.; BAKER OIL TOOLS INC., a division of Baker
Hughes Oilfield Operations Inc.

Defendants-Appellants

Appeals from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, WIENER, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

The panel opinion issued August 28, 2009, is withdrawn and the following opinion is substituted in its place.

This is an appeal from a trial stemming from injuries sustained by Plaintiff-Appellant Seth Becker ("Seth") while he was aboard an oil rig in the

Gulf of Mexico. After a bench trial, the district court held Defendant-Appellant Baker[1] 55% liable for Seth's injuries and Defendant-Appellee Tidewater[2] 45 % liable for Seth's injuries. The court also held that Baker was obligated to fully indemnify Tidewater for any liability for its negligence resulting in an injury to Seth. Baker appeals the district court's denials of summary judgment as well as the court's final judgment on issues of apportionment of fault and indemnity. Seth also appeals the district court's apportionment of fault and its findings concerning gross negligence. Based on the following analysis, we affirm in part and reverse in part the judgment of the district court and remand for proceedings consistent with this opinion.

I.

A.

Seth was injured while working as a summer intern for Baker as part of the crew of the M/V Republic Tide (the "Republic Tide"), a boat outfitted for well-stimulation services, in June 1999. Baker was using the Republic Tide pursuant to a time-charter contract with the boat's owner, Tidewater.

The injury occurred while the Republic Tide's crew was performing well-stimulation services on the R&B Falcon/Cliffs Rig 153 (the "rig"), an oil rig owned by Cliffs Drilling and operated by R&B Falcon (collectively, "Falcon") in the Gulf of Mexico. The job required the Republic Tide's crew to unspool a coiled steel hose from the boat's stern, extend it to the rig, and attach it to the rig's

---

[1] "Baker" refers collectively to Baker Hughes, Inc. and Baker Oil Tools, Inc., a division of Baker Hughes Oilfield Operations, Inc.

[2] "Tidewater" refers collectively to Tidewater Inc., Tidewater Marine, LLC, Twenty Grand Offshore, Inc., Pental Insurance Company, and Certain Underwriters at Lloyds, Subscribing Risk No. LEO 106200.

wellhead. While the steel hose was extended, the Republic Tide's movements caused the hose to whip across the rig's deck. To help keep the hose in place, Baker's employees ran it through a Baker-designed, Baker-constructed apparatus called the "blue shoe." The Republic Tide's captains, Captain Givens and Captain Lachney, employees of Tidewater, also sought to keep the hose in place by minimizing the Republic Tide's movements relative to the rig. Crew members tied off the boat's stern to the rig with two lines (one starboard and one port), and the captains used the boat's bow thruster to maintain position against the Gulf of Mexico's current. The crew kept the Republic Tide's anchor raised because the anchor windlass had a hydraulic oil leak which was discovered by Tidewater when it pulled up to the rig on the day of the incident.

While Seth was aboard the rig, the Republic Tide's bow thruster failed. This failure created an emergency because, without the thruster, the Republic Tide could not maintain its bow's position against the current. The Republic Tide's captain on duty, Captain Lachney, contacted the rig and reported that the thruster had failed. Moments later, the current caused the port-stern mooring line to break. The Republic Tide, still connected by the starboard-stern mooring line and the (slack) steel hose, and still being pushed starboard, would collide with the oil rig without intervention.

Captain Lachney instructed Baker crew members aboard the boat to disconnect the steel hose from the reel assembly that attached the hose to the boat. The reel assembly contained a quick-release mechanism. The reel malfunctioned due to modifications made to the system and began to lock up. The quick disconnect button did not release the hose and the employees were unable to move the reel manually. Consequently, the crew was unable to

disconnect the hose.

Captain Lachney again contacted the rig. He reported that the hose would need to be disconnected from the rig's wellhead, and Baker's supervisor aboard the rig received this message. The supervisor ordered three Baker employees, including Seth, to the rig's deck to disconnect the hose.

Meanwhile, the Gulf's current continued to push the Republic Tide toward the rig. Captain Lachney, fearing impact with the rig, decided to break the starboard-stern mooring line. He did not, however, contact the rig before taking this action; Baker's crew members on the rig's deck were unaware that the steel hose was about to be pulled taut. Captain Lachney powered the boat's engines and pulled away from the rig.

Seth was standing in the bend of the steel hose when the Republic Tide's movement snapped the hose taut, pinning Seth. The hose cut through Seth's legs, amputating one leg and nearly amputating the other. He lost between eight and nine pints of blood before being evacuated. Doctors later had to amputate the second leg below the knee. Seth, twenty-two years old at the time of the accident, now suffers from severe health problems which will require ongoing treatment, counseling, and medication for the remainder of his life.

B.

Seth sued Baker, Tidewater, and Falcon under the Jones Act, the Longshore and Harbor Workers Compensation Act ("LHWCA"), and general maritime law. A jury trial was held in July 2001, concluding in a verdict finding Seth to be a Jones Act seaman and awarding him damage. The jury apportioned fault among the defendants, assigning each a percentage. On appeal, this court reversed the jury's finding and held Seth to be a longshoreman, set aside liability

4

and damage findings, and remanded the case to the district court for further proceedings under the LHWCA. *Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003) ("*Becker I*").

On remand, the district court granted Seth leave to amend his complaint to request a bench trial for his remaining claims under Federal Rule of Civil Procedure 9(h). Baker filed an interlocutory appeal challenging the district court's decision to hold a bench trial rather than a jury trial, which was accepted by this court. On appeal, the district court's ruling was affirmed, and the case was remanded a second time for a bench trial. *Becker v. Tidewater, Inc.*, 405 F.3d 257 (5th Cir. 2005) ("*Becker II*").

A limited second trial was held by the district court as an admiralty action, without a jury, pursuant to Federal Rule of Civil Procedure 9(h). Before the trial on remand, Baker and Seth entered into a Mary Carter agreement.[3] Baker gave Seth $23.5 million dollars in exchange for an agreement to share any net recovery he may have against Tidewater on the basis of 75% to Baker and 25% to Seth. The district court denied all of Baker's motions for summary judgment that attempted to invalidate the reciprocal indemnity agreement. The court ultimately awarded Seth almost $37 million damages against Baker and Tidewater under the LHWCA. The court held that Baker, as time-charterer of the boat, was 55% liable for Seth's injuries and Tidewater, as owner of the boat, was 45% liable. Falcon was held free from fault and liability. The court held that under the reciprocal indemnity agreement in the contract between Baker

---

[3] A Mary Carter agreement is a contract "between the plaintiff and one of several defendants whereby the contracting defendant will settle with the plaintiff before trial, but must remain in the suit, and will be reimbursed to some specific degree from the plaintiff's recovery from the other defendants." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 309 n.49 (5th Cir. 1993).

and Tidewater, Baker was obligated to fully indemnify Tidewater for any liability for Seth's injuries. Baker and Seth timely appealed the judgment of the district court.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005); *see also Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Bd. of Trs. New Orleans Employers Int'l Longshoremen's Ass'n v. Gabriel, Roder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008); *Otto*, 346 F.3d at 533 ("Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." (citations omitted)). This court reviews the district court's denial of summary judgment de novo. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002).[4]

---

[4] This court normally declines to review a "district court's denial of motions for summary judgment when the case comes to us on the movant's appeal following adverse judgment after full trial on the merits." *Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 572 (5th Cir. 1994). Although the rule does not appear to have been explicitly stated in this circuit, other circuits have held that a denial of summary judgment is appealable after a trial on the merits when there was a ruling by the district court on an issue of law. *See Banuelos v. Constr. Laborers' Trust Funds for S. Cal.,* 382 F.3d 897, 902 (9th Cir. 2004). In addition, because Rule 50 motions are not required to be made following a bench trial, it is appropriate to review the court's denial of summary judgment in this context. *See Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc.*, 157 F.3d 1032, 1037 n.3 (5th Cir.1998) ("In a jury trial, of course, a party must make (and renew at the trial's conclusion) a Rule 50(a) motion for judgment as a matter of law in order to preserve sufficiency of the evidence for appellate review. But nothing indicates that a similar rule applies to an appeal of the sufficiency of evidence to support findings or sufficiency of findings to support a judgment following a bench trial." (citations omitted)).

III.

The time-charter maritime contract entered into by Tidewater and Baker contained reciprocal indemnity provisions, with Tidewater being responsible for injuries to Tidewater employees, and Baker being responsible for injuries to Baker employees. On appeal, Baker presents a number of arguments asserting that the district court erred in holding that Baker was obligated to indemnify Tidewater fully for any liability for Seth's injuries under this agreement. Based on the following analyses, we hold that the district court did not err in holding that the reciprocal indemnity agreement between Baker and Tidewater obligates Baker to indemnify Tidewater fully for Seth's injuries.

A.

First, Baker appeals the district court's ruling that the reciprocal indemnity agreement entered into by Baker and Tidewater was valid under § 905 of the LHWCA. 33 U.S.C. § 905(b). Section 905(b) of the LHWCA provides that agreements for an employer to indemnify a vessel from injuries to a longshoreman are void. *Id*. However, reciprocal-indemnity agreements between employer and vessel are not void when a longshoreman is entitled to LHWCA relief by virtue of the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1333(b); 33 U.S.C. § 905(c). The question is whether Seth, who was a longshoreman at the time of the incident,[5] is covered by § 1333(b) of OCSLA. Baker argues that Seth is not covered because he does not satisfy the "situs" test and is thus not covered under § 1333(b). We find this argument unavailing.

---

Because Baker appeals the district court's legal conclusions in denying summary judgment, and the case was a bench trial, review of the denials of summary judgment is appropriate.

[5] *Becker I*, 335 F.3d at 393.

"Section 1333(b) of OCSLA extends the LHWCA's benefits to employees disabled or killed 'as the result of operations conducted on the outer Continental Shelf for the purposes of exploring for . . . [or] developing . . . the natural resources . . . of the subsoil and seabed of the outer Continental Shelf.'" *Mills v. Director*, 877 F.2d 356, 357-58 (5th Cir. 1989) (en banc) (quoting 43 U.S.C. § 1333(b)). Under this subsection, with two exceptions, all employees suffering injury or death on the outer continental shelf are covered by the LHWCA if they are engaged in exploring for or developing natural resources. The only exceptions, not applicable here, are for masters or members of a crew of a vessel or employees of the United States. 43 U.S.C. § 1333(b)(1). The only status requirement is that the worker be engaged in exploration or production of minerals, and the only situs requirement is that the worker be injured on the outer continental shelf. *See Mills*, 877 F.2d at 362. Because Seth was engaged in mineral exploration, was a non-seaman, and was injured on the outer continental shelf while employed by an employer engaged in mineral production, he is covered under the LHWCA.[6]

### B.

Baker and Seth also contend that the indemnity provision is invalid because they allege that Tidewater committed gross negligence. It is undisputed that Baker escapes indemnity if Tidewater's actions leading to Seth's injuries were grossly negligent. *See Houston Exploration Co. v. Halliburton Energy*

---

[6] Although we are persuaded that the above analysis is the correct approach in determining whether a worker injured on the outer continental shelf is covered by the LHWCA, we recognize that some of our cases have suggested that more is required to satisfy the situs requirement. *See, e.g.*, *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498-500 (5th Cir. 2002). Even if we follow this approach, since Seth was injured on a jack-up oil rig on the OCS, he satisfies the *Demette* situs test.

*Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) (noting that a waiver of liability for gross negligence is void).  The district court found that Tidewater's actions were negligent but not grossly negligent.

"A finding that a party is negligent or grossly negligent is a finding of fact and must stand unless clearly erroneous.  A finding of fact is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (footnote omitted).  This court has defined gross negligence as "willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Id.* (interpreting Louisiana law).  "Mere inadvertence or honest mistake does not amount to gross negligence."  *Id.*; *see also Todd Shipyards Corp. v. Turbine Serv., Inc.* 674 F.2d 401, 411 (5th Cir. 1982) ("Gross negligence, which will invalidate an exemption from liability has been defined as harm willfully inflicted or caused by gross or wanton negligence." (citation omitted)).

Baker and Seth argue that Tidewater's actions, considered as a whole, were grossly negligent.  The district court found that Tidewater's "most egregious" conduct was moving the Republic Tide without warning.  Baker and Seth characterize this failure to warn as gross negligence because Tidewater's captain requested crew aboard the rig to disconnect the steel hose and knew that moving the Republic Tide would cause the hose to move across the rig's deck.  Based on the record, the failure to warn was mere inadvertence and not gross negligence.  The situation was an emergency, and the captain needed to act quickly.  He moved the Republic Tide, but only to avoid a collision with the rig.  The captain's actions thus reflect a concern for safety, rather than a reckless

disregard for safety.

Baker and Seth also contend that Tidewater was grossly negligent in failing to warn the rig's crew that the Republic Tide would be unanchored, but the record reflects that Baker employees were aware the anchor was raised and, in any event, proceeding with such a job while unanchored was not unusual. Baker and Seth contend that Tidewater knew the bow thruster was faulty when Tidewater decided to rely on it instead of the Republic Tide's anchor, but: (1) three Tidewater employees and three Baker employees testified that the Republic Tide experienced no bow-thruster problems prior to the accident; (2) one individual testified that a Tidewater employee communicated with the rig about a bow-thruster problem but reported that the problem had been resolved; and (3) the testimony is unclear as to whether the problem mentioned was recent or occurred before the bow thruster had been replaced six months earlier. The district court did not commit clear error in finding that Tidewater was not grossly negligent; there is substantial evidence to support the holding that Tidewater was merely negligent, and not grossly negligent, under the circumstances presented.[7]

C.

---

[7] Baker also challenges the district court's refusal to allow Baker certain additional discovery to bolster its claim of gross negligence on remand from *Becker I*. We review a trial court's evidentiary ruling for an abuse of discretion. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007). "If we find that an abuse of discretion has occurred, we then apply the harmless error doctrine. Thus, the evidentiary ruling will be affirmed unless the district court abused its discretion and a substantial right of the complaining party was affected." *Id.* The district court's discovery ruling distinguished between witnesses whom Baker could have deposed before the original trial and witnesses whom it could not have—the ruling permitted Baker to depose the latter. It also permitted Baker to supplement the deposition of a witness it already had deposed. Allowing this discovery, while forbidding Baker to retain experts or to depose witnesses whom it could have deposed before the original trial but apparently chose not to, was not an abuse of discretion.

Baker contends that because Tidewater breached the time-charter contract, the indemnity provision contained therein was rendered void.[8] Baker cites *Marquette Transportation Co. v. Louisiana Machinery Co.*, 367 F.3d. 398 (5th Cir. 2004), for the proposition that a breach of a contract containing an indemnity agreement serves to invalidate the indemnity agreement. However the court in *Marquette,* after finding that the indemnity agreement at issue was enforceable, states only that if the party "had been found to be in breach of those warranties, perhaps our application of the indemnity clause would be different." 367 F.3d. at 408. *Marquette* does not hold that breach of a contract necessitates invalidation of an indemnity agreement included therein. Even if the indemnity agreement could be invalidated by Tidewater's breach of the time-charter contract, the district court did not err in holding that Tidewater did not breach the contract. The time-charter contract required Tidewater to deliver to Baker a boat that was:

> properly equipped and in every respect seaworthy and in good running order and in every way fit and ready for [Baker's] use and for the employment intended, so far as the exercise of due diligence can make her; and [Tidewater] undertakes to so maintain the vessel during the period of service under this Charter.

Baker contends that Tidewater breached this provision by delivering the Republic Tide in an unseaworthy condition. Whether Tidewater exercised due diligence in delivering and maintaining the Republic Tide in seaworthy condition is a question of fact reviewed for clear error. *Stevens v. East-West Towing Co.,*

---

[8] Tidewater contends that Baker has waived this argument, among others, because it was outside the mandate issued by this court in *Becker I. See Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007). We need not address this issue because all of the arguments that Tidewater contends are barred by the mandate rule are rejected on the merits in the instant opinion.

649 F.2d 1104, 1106 (5th Cir. Unit A July 1981). Baker contends that the vessel was unseaworthy because the bow thruster and anchor windlass were faulty. The district court found that Tidewater exercised due diligence to deliver and to maintain the Republic Tide in seaworthy condition. There was conflicting testimony concerning whether Tidewater knew of any bow-thruster problem, and several Tidewater employees testified that the Republic Tide had never experienced any previous issues with the bow-thruster. Although Tidewater did not have evidence of September or March inspections of its anchor mechanism as its procedures required, they had inspected the anchor in May before the June 1999 incident according to testimony of Tidewater's engineer. The record contains substantial evidence that Tidewater did not know the bow thruster or anchor were faulty, and therefore, even if Tidewater's breach could invalidate the indemnity agreement, the district court did not clearly err in holding that Tidewater did not commit a breach of contract.

D.

Baker also argues that even if the indemnity provision is upheld, it only obligates Baker to indemnify Tidewater for "general damages." The interpretation of a contractual indemnity provision is a question of law, reviewed de novo. *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984) (per curiam). "A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Id.* at 955 (citing *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 (5th Cir. 1983)).

Article XIV of the time-charter contract contains three paragraphs. In the

first paragraph, Tidewater agrees to defend and indemnify Baker "from and against all claims, suits, losses, liabilities, expenses, demands, costs (including reasonable attorneys' fees) and/or damages as a result of . . . injury, illness, or death" of Tidewater's employees. In the second paragraph, Baker reciprocates the promise contained in the first paragraph. The relevant portion of the third paragraph reads:

> Notwithstanding anything to the contrary contained herein, it is expressly agreed by and between the parties hereto that, regardless of the negligence on the part of any party hereto or the unseaworthiness of any vessel, neither such party shall be liable to the other for any punitive, indirect, incidental, special or consequential damages of any kind or nature (including, but not limited to, loss of profits, loss of use, loss of hire, and loss of production); and each party hereby agrees to waive its rights of recourse in this regard against the other party.

Baker argues that this paragraph of the time-charter contract restricts the preceding indemnity provision to general damages only, which they contend encompasses only physical pain/suffering and mental anguish/suffering damages and excludes damages which Baker characterizes as "special damages"—past and future medical expenses, past lost wages, and impairment of earning capacity.

There is nothing in the third paragraph to suggest that it is a restriction on the indemnity provisions in the preceding paragraphs. It references only liability between the parties to the agreement (Tidewater and Baker), and does not reference indemnity or liability to third parties or employees. The types of damages referenced in this paragraph are those traditionally associated with contractual claims, and not the personal injury claims which are the subject of the indemnification provision. *See Nat'l Hispanic Circus, Inc. v. Rex Trucking,*

*Inc.,* 414 F.3d 546, 549 (5th Cir. 2005) ("Special damages are those that result from a party's breach of contract but are not reasonably foreseeable"); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 404 (5th Cir. 2003) ("[C]onsequential, or 'special,' damages . . . are those unusual or indirect costs that, although caused by the defendant's conduct in a literal sense, are beyond what one would reasonably expect to be the ordinary consequences of a breach."). The illustrative parenthetical following the description of excepted damages—"(including, but not limited to, loss of profits, loss of use, loss of hire, and loss of production)"—also supports this interpretation. Baker's proffered interpretation of the term "special damages" does not fall within the plain meaning of the term, especially when read in context with the rest of the paragraph at issue. Therefore, the district court did not err inn holding that the third paragraph of Article XIV of the time-charter contract does not restrict the scope of the indemnity provision.

E.

Baker contends that Tidewater must exhaust its liability insurance policies before turning to Baker for indemnity. The district court held that because Baker was only an "additional assured" under the policies for risks assumed by Tidewater, there was no coverage for Seth's injuries because those risks were assumed by Baker pursuant to the indemnity agreement.

Under Article XI of the time-charter contract, Tidewater must procure and maintain a $2,000,000 Protection and Indemnity ("P&I") insurance policy covering Tidewater's liabilities, "including Collision/Towers/Liability and crew coverage, but excluding Cargo Liability coverage and coverage for those risks, if any, assumed or insured by CHARTERER [Baker] in this Charter." Article

14

XI further specifies that the policy "shall include CHARTERER, in its capacity as time-charterer of the vessel, as an additional assured, but only with respect to the risks assumed by OWNER [Tidewater] in this Charter."

Tidewater procured and maintained a $5,000,000 primary marine-liability policy. Under this policy, "the unqualified word 'Assured' includes . . . any person, organization, trustee or estate to whom or to which the 'Named Assured' [Tidewater] is obligated by virtue of a contract or agreement to include or name as an assured, co-assured or additional assured." Tidewater also procured and maintained an excess marine-liability policy designating Tidewater as a named assured but not designating Baker as an additional assured.

Baker cites a series of Fifth Circuit cases that have held that, in certain circumstances, when a contract contains a reciprocal-indemnity clause and requires the indemnitee to maintain an insurance policy designating the indemnitor as an "additional assured," the indemnitee must exhaust the insurance coverage before receiving indemnity. *See, e.g., Tullier v. Halliburton Geophysical Servs., Inc.* 81 F.3d 552 (5th Cir. 1996); *Klepac v. Champlin Petroleum Co.*, 842 F.2d 746 (5th Cir. 1988); *Ogea v. Loffland Bros. Co.*, 622 F.2d 186 (5th Cir. 1980). The primary question posed here is whether Baker is an "additional assured" under Tidewater's insurance policy for Seth's claims. In order to determine if Baker is an "additional assured," we must read the insurance and indemnity provisions of the time-charter contract in conjunction in order to properly interpret the meaning of the contract. *See Ogea*, 622 F.2d at 190.

Baker contends that it is an "additional assured" because Tidewater must procure and maintain insurance designating Baker as an "additional assured."

15

Tidewater argues that, under Article XI's plain language, Tidewater's duty is more limited: it must procure and maintain insurance designating Baker as an "additional assured, but only with respect to the risks assumed by OWNER [Tidewater] in this Charter." Tidewater thus argues that because Baker—not Tidewater—assumed the risk of injury to Baker employees, the contract does not require Baker to be designated as an "additional assured" for coverage over Seth's injuries. Tidewater also argues that the language in its insurance policies demonstrates that Baker is not covered for Seth's claim because the policy specifically limits Baker's "additional assured" coverage to risks assumed by Tidewater under the time-charter.

Baker contends that this issue is addressed in *Klepac*, which held that an indemnitor's obligation does not begin to run until the indemnitee's insurance policy, naming the indemnitor as the additional assured, is exhausted. *Klepac*, 842 F.2d at 747–48. However, the contract in *Klepac* did not limit additional assured coverage to only risks assumed by the indemnitee, as the time-charter does here. *Id*. The *Klepac* contract stated that the insurance coverage "shall include" coverage for which the insured indemnitee was reciprocally obligated to indemnify the indemnitor. The court extended the obligation to cover damages for which the indemnitor was obligated to cover the insured indemnitee. *Id*. at 748. Here, however, the time-charter contract specifically *excludes* from coverage risks assumed by Baker. Thus, *Klepac* does not present the exact situation at issue here.

Although there is no case which presents a contract with the precise limiting language at issue here, Article XI of the time-charter contract expressly limits Tidewater's obligation to designate Baker as an "additional assured" to

"the risks assumed by OWNER [Tidewater] in this Charter." Tidewater's insurance policy, in turn, limits Baker's status as an "additional assured" to when Tidewater "is obligated by virtue of a contract or agreement" to designate Baker as an "additional assured." Furthermore, the time-charter specifically excludes risks assumed by Baker from Tidewater's insurance coverage. Here, the injury was to Seth, a Baker employee. Under the parties' reciprocal-indemnity agreement, Baker, not Tidewater, assumed the risk of injury to Baker employees. Because Tidewater did not assume the risk of injury to Seth, Baker is not an "additional assured" to Tidewater's insurance for Seth's injuries. Thus, the district court did not err in holding that the insurance policies need not be exhausted before Baker's indemnification obligation began.

Baker also argues that Tidewater's insurers, under the policies discussed in the foregoing analysis, were obligated to defend Baker against the claims made by Seth against Baker.[9] In determining whether an insurer had a duty to defend, we look to the face of the pleadings. *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 545–46 (5th Cir. 1992). "The insurer is under a legal duty to defend if, and only if, the petition alleges facts construing a cause of action within the coverage of the policy." *Id.* (citation omitted). An insurer's duty to defend is greater than its duty to provide coverage. *Landry v. Oceanic Contractors, Inc.*,731 F.2d 299, 305 n.2 (5th Cir. 1984).

---

[9] It appears that the district court never ruled explicitly on the issue of whether Tidewater's insurers were obligated to defend Baker in Seth's suit. However, this court has held that "[i]f a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence." *Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998). The record supports the district court's rejection of the notion that Tidewater's insurers were obligated to defend Baker because it did not qualify as an additional assured under the policy.

Because the pleadings stated only a claim by one of Baker's employees, a risk expressly assumed by Baker in the time-charter contract, there was no cause of action plausibly within the coverage of the policy. Because Baker could be entitled to a defense under the policy only for covered risks assumed by Tidewater (i.e., suits brought by Tidewater employees against Baker), Tidewater's insurer was not obligated to defend Baker in this suit.

## IV.

## A.

Appellants also present arguments concerning the liability attributed to Baker and Tidewater, respectively. Seth argues that Tidewater's conduct in breaking the Republic Tide's starboard-stern mooring line without warning was a superseding cause of Seth's injuries, and thus Tidewater should be entirely liable. "The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41 (1996).

The district court concluded that Tidewater's conduct was part of a series of actions that caused Seth's injuries and held that "no one party was solely responsible for the dangerous conditions that resulted in the grave harm that befell Seth Becker."

In order to determine what constitutes a superseding cause, this court has stated that:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner *does not* make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>     (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 652 (5th Cir. 1992) (quoting *Nunley v. M/V DAUNTLESS COLOCOTRONIS*, 727 F.2d 455, 464–65 (5th Cir. 1984) (en banc) (citing Restatement (Second) of Torts § 447)).

The district court found that Tidewater's captain snapped the starboard-stern mooring line to prevent impact with the rig. The captain's failure to warn anyone aboard the rig that he was about to do this was negligent. However, the captain's actions are excused from being a superceding cause of Seth's injury. The captain's actions were not highly extraordinary considering the whole of the circumstances. Because of the defective Coflex hose and blue shoe system, the captain could not disconnect the hose from the rig and was thus forced to snap the line to prevent impact with the rig. The captain's actions were not "so extraordinary that a reasonably prudent person could not have foreseen [their] occurrence." *Tidewater Marine, Inc. v. Sanco Int'l., Inc.*, 113 F. Supp. 2d 987, 999 (E. D. La. 2000). The district court did not clearly err in determining that Tidewater was not the superseding cause of the incident.

## B.

Baker and Seth also argue that the district court erred in determining that most of Baker's negligent acts were committed while Baker was acting within its role as time-charterer of the boat, and not as Seth's employer. The court's determination that Baker's acts fell within its duty as time-charterer is reviewed

de novo.[10]  *Cf. Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (holding that whether a legal duty is owed is a question of law).

Section 905(a) of the LHWCA precludes an employee from suing his employer in tort.  33 U.S.C. § 905(a).  Consequently, Baker cannot be held liable to Seth in its capacity as his employer.  It can, however, be held liable under section 905(b) if at fault in its capacity as the time-charterer of the Republic Tide.  *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.*, 830 F.2d. 1332, 1339 (5th Cir. 1987).  Section 905(b) of the LHWCA provides the exclusive remedy for a longshoreman against a vessel.  The *Kerr-McGee* court stated that a time-charterer can be liable under section 905(b) if the harm caused is "within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement."  830 F.2d. at 1343.  A defendant time-charterer who is also the plaintiff's employer owes the plaintiff duties both as an employer and as a time-charterer.  *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990).  The two duties are separately owed and do not affect each other. *Id*.

Under the traditional role of time-charterer, the time-charterer is expressly responsible for directing the commercial activity of the vessel, determining the ship's routes, destinations, timing of the mission, and the designation of cargo.  *Kerr-McGee*,  830 F.2d at 1339.  The vessel owner, on the other hand, remains responsible for the seaworthiness of the vessel, dangerous conditions on board, navigational errors by the pilot and negligence by the crew,

---

[10] Although apportionment of fault is traditionally a fact question, *Flowers Transp., Inc. v. M/V Peanut Hollinger*, 664 F.2d 112, 113 (5th Cir. 1981), the district court's characterization of Baker's actions as those of time-charterer versus employer is a question of law because it concerns the duties owed as time-charterer under existing precedent and the language of the contract.

and a reasonably safe means of access for those boarding or leaving the vessel. *Moore*, 912 F.2d at 792. Here, as noted by the district court, the time-charter contract shifted additional responsibilities to Baker as time-charterer:

> In this case, the Charter Agreement also shifted other responsibilities to Baker. . . . Baker was responsible for and retained control over the equipment it installed on the vessel. The equipment was installed to assist Baker's performance of specialized services on oil and gas wells. As such, the Coflex hose, Coflex hose reel assembly, blue shoe and pumping operations associated with this equipment were within Baker's exclusive control under the Charter.

*Becker v. Tidewater, Inc.*, No. 99-1198, 2007 WL 3231655, *7 (W.D. La. Nov. 14, 2007).

The district court identified several causes of Seth's harm. It labeled the following causes as being within Baker's role as time-charterer: (1) proceeding with gravel-packing operations while unanchored; (2) failing to notify Falcon, the owner and operator of the oil rig, that the Republic Tide was unanchored; (3) negligently modifying the Coflex hose system; (4) failing to test, clean, or properly maintain the Coflex hose system; (5) failing to properly train Baker employees how to operate the Coflex hose system; (6) failing to warn Seth of the gravity of the unfolding situation on the oil rig and the dangers of the Coflex hose and blue shoe system; (7) negligently designing the blue shoe; and (8) failing to test the blue shoe.

The district court erred in determining that some of the Baker's acts were committed in its role as time-charterer rather than employer. Proceeding with gravel-packing operations while unanchored was correctly characterized as time-charterer negligence. *See Kerr-McGee*, 830 F.2d at 1341 ("The

time-charterer directs where and when the vessel will travel, so if it forces it out in hurricane weather or similarly treacherous conditions, it may be liable under section 5(b).").  Directing the Republic Tide to remain in position, while unanchored, for the duration of the gravel-packing job and failing to notify Falcon that the Republic Tide was unanchored are also part of the time-charterer's traditional responsibilities, namely "directing the commercial activities of the vessel."

Negligently modifying the Coflex hose system; failing to test, clean, or properly maintain the Coflex hose system; negligently designing the blue shoe; and failing to test the blue shoe were all  time-charterer negligence under the time-charter contract.  The court in *Kerr-McGee* specified that a time-charterer is also liable when a responsibility "has been transferred [to the time-charterer] by the clear language of the charter agreement"  830 F.2d at 1343.  Here, Article VIII of the time-charter contract specified that Baker could install equipment on the Republic Tide and that "[a]ll equipment installed by [Baker] shall remain its property . . . ."  Baker thus retained legal control and responsibility and, as the district court found, actual control of its equipment aboard the Republic Tide. These were time-charterer responsibilities allocated to Baker specifically by the time-charter contract.  Baker's negligence causing the equipment's failure was time-charterer negligence.

However, failing to properly train Baker employees how to operate the Coflex hose system and failing to warn Seth of the dangers of the Coflex hose and blue shoe system should not have been characterized by the district court as time-charterer negligence.  *See Kerr-McGee*, 830 F.2d at 1342 (holding that providing a safe place to work is a duty imposed on a defendant in its capacity

as employer and not time-charterer). Nothing in the case law defining a time-charterer's traditional responsibilities or in the time-charter contract leads to the conclusion that training and warning its employees is encompassed by Baker's role as time-charterer. These actions were taken by Baker in its role as employer. Because the district court should not have held that Baker's failure to train its employees and its failure to warn Seth of the gravity of the situation were time-charterer negligence, it should not have considered these actions when apportioning LHWCA liability between Baker and Tidewater. We remand this matter to the district court for the purpose of re-evaluating the apportionment of fault while considering only those acts of negligence that Baker committed as time-charterer in accordance with this opinion.[11]

## V.

Finally, Baker appeals the district court's holding that the indemnity provision permits Tidewater to recover the attorneys' fees that it incurred in establishing its right to indemnity. This is a question of contractual interpretation, reviewed de novo. *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1042 (5th Cir. 1987).

---

[11] We acknowledge that, as a practical matter, the fault allocation between Baker and Tidewater does not affect Baker's ultimate liability, because Baker must indemnify Tidewater for all of Seth's damages under the reciprocal indemnity agreement. However, because the plaintiff is a party to this appeal, correct apportionment may be necessary in order to determine Seth's rights against each defendant, without regard to the contractual indemnity agreement between them. *See Jamison v. Ellwood Consol. Water Co.* 420 F.2d 787, 789 (3d Cir. 1970) ("[A] valid indemnity provision in no way affects the victim's right of recovery. Rather, it merely determines who among the parties to the contract shall bear the ultimate cost of the victim's claim."). Although Seth's actual recovery from the parties may be affected by the Mary Carter agreement he entered into with Baker, we have not been presented with any arguments from the parties concerning the effect of the agreement on apportionment and we do not address the issue herein.

Although a general indemnity provision typically includes recovery of attorneys' fees incurred in defending against a claim covered by the indemnity provision, "the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification." *Id.* at 1046 (citing *Weathersby*, 752 F.2d at 959). Although there is some authority for the proposition that attorneys' fees incurred in enforcing a contractual right of indemnity may be recoverable if the indemnity provision specifically anticipates their recoverability, the agreement here does not specifically anticipate that attorneys' fees incurred in enforcing the indemnity provision will be recoverable. *See Royal Exch. Assurance Co. v. M/V GULF FLEET NO. 54*, No. 86-1367, 1991 WL 99406, at *2 (E.D. La. May 31, 1991) (unreported) (holding that indemnity provision which provided for reimbursement "for any and all necessary expenses, attorney's fees, and costs incurred in the non-judicial or judicial enforcement of any part of the indemnity agreements" specifically allowed for recovery of fees incurred in enforcing indemnity provision). Here the agreement only provides that "[Baker] shall protect, defend, indemnify and hold harmless [Tidewater] from and against all claims, suits, losses, liabilities, expenses, demands, costs (including reasonable attorney's fees) and/or damages as a result of such illness, injury or death." This provision is a general indemnity clause, and does not specifically provide for recovery of attorneys' fees in enforcing the indemnity provision. Thus, the prohibition barring the recovery of legal fees incurred in establishing a right to indemnification applies to the instant contract. *Dow Chem.*, 815 F.2d at 1046.

The district court erred in holding that the indemnity agreement permits Tidewater to recover the attorneys' fees that it incurred in establishing its right

to indemnity. This matter is remanded for the purpose of calculating and awarding Tidewater only the attorneys' fees that Tidewater incurred in defending against Seth's tort action.

VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part, and REMANDED for the limited purposes of (1) calculating, and awarding Tidewater, the attorneys' fees that Tidewater incurred in defending against Seth's tort action and excluding any fees incurred in enforcing its right to indemnity and (2) apportioning liability while considering only those acts of negligence that Baker committed as time-charterer and not those it committed as employer.