# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2013

No. 12-60868
Summary Calendar

Lyle W. Cayce
Clerk

VIKKI MAY,

Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:10-CV-180

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Vikki May commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), alleging that the Mississippi Department of Corrections refused to hire her on the basis of her race. After a jury rendered a verdict in favor of the Mississippi Department of Corrections, the district court entered judgment against May and dismissed her complaint with prejudice.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60868

May now appeals. For the reasons that follow, we AFFIRM the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2007, Vikki May, an African-American female, applied for a correctional officer position with the Mississippi Department of Corrections ("MDOC") during one of its "interview and screening" events held in Leakesville, Mississippi. The interview and screening process, also known as the "rapid hire" process, allows applicants to complete the application, interview, and screening process in a matter of hours. As part of the process, applicants are required to interview, and take drug, writing, math, and physical agility tests.

The facts surrounding May's drug test—which were vigorously contested by the parties—form the basis of this dispute. According to May, the urine sample she provided for the drug screening was not tested using an authorized method, nor was it analyzed by a qualified individual. As a result, she contends that the screening was defective, leading to inconclusive results and precipitating the events underlying her lawsuit.

After May's urinalysis returned inconclusive results, screener Jean McDonald, an MDOC employee, summoned MDOC officer Todd Wilson to investigate. Wilson instructed McDonald not to retest May, and to record on May's report that she had tested positive for cocaine.[1] Wilson himself also made a similar notation on May's drug report. After Wilson left the drug screening area, McDonald called Milton Martin, Wilson's supervisor, and requested that he review the drug screening results. At that time, Martin indicated to McDonald that the results were inconclusive.

---

[1] McDonald's deposition reveals that May did not test positive, but rather that the results were inconclusive. McDonald testified that she recorded a positive test for cocaine because "[t]hat was the chamber the problem was in" on the testing device.

2

No. 12-60868

In the meantime, after having McDonald point May out to him, Wilson approached May to discuss the test results with her.  According to May, Wilson told her that she was "hot" and had "tested positive for cocaine."  When May replied that she did not use drugs, Wilson allegedly called her a liar and a "crackhead," and indicated that abusing drugs is "what you people do."  May submits that she then asked Wilson what he meant by "you people," to which he purportedly replied "you niggers."  At that point, Wilson instructed another officer, Dickie Wilkerson, to assist him in escorting May off the premises.

May left the facility and drove to a nearby hospital where she underwent another drug screening.  After testing negative, she returned with the results to the interview location.  The parties agree that she then spoke with Martin, although the content of that conversation is disputed.  According to May, after she complained to Martin about the conversation she and Wilson had engaged in, Martin told her that Wilson was a "good guy," but that he was "hotheaded." May alleges that Martin told her that they could "work something out," that the job was hers, and that he would have someone contact her about the position. Martin's contention is that he advised May that she could reapply for the position at the next interview and screening event.

On October 16, 2007, a standard form letter bearing the stamped signature of Ruby Weathers, director of personnel services for MDOC, was sent to May informing her that she tentatively had been selected for a position, but that her offer was contingent upon her successful completion of certain medical forms and a background investigation.  As the individual with the authority to extend offers to applicants for correctional officer positions, Weathers had received paperwork from McDonald, Martin, and another MDOC employee regarding the applicants, including May, who had attended the October 9

3

interview and screening event in Leakesville.[2]  Wilson did not forward any paperwork to Weathers, however, and at no time did Weathers interact with, or know Wilson.  Upon receipt of the conditional offer of employment, May contacted MDOC as instructed to accept the position.  According to May, she eventually spoke directly with Weathers about Wilson's conduct because she was concerned about potential retaliation if no action was taken against him.  Weathers denies that such a conversation ever took place.

On October 23, 2007, Weathers sent another letter, personally signed by her, explaining to May that her offer of employment had been withdrawn due to May's "incompletion of the Interview and Screening (I/S) process."  The letter invited May, however, to "complete this process on [MDOC's] next I/S day scheduled on November 6, 2007, or November 13, 2007."  Weathers also provided May with a flyer about the events and encouraged May to contact her with any questions or concerns.  As reflected in the letter of October 23, Weathers maintains that May's conditional offer was rescinded only because, as a result of not receiving a negative drug test, May did not complete the interview, or the writing, math, and physical agility tests.

May never returned to MDOC to complete the interview and screening process.  Instead, on March 11, 2008, she filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC").  May highlights that, in response to her charge of discrimination, MDOC reported to the EEOC that its decision not to hire May was not based on her race, but on the fact that May "tested positive, thereby failing, the drug test portion . . . of the interview process."  MDOC underscores that its reply to the EEOC also reflects that May's drug test was "incomplete," and that she "was unable to complete the interview process due to a faulty drug test and was escorted off the compound."

---

[2] Weathers's office was located at MDOC headquarters in Jackson, Mississippi.

No. 12-60868

The EEOC eventually concluded that the evidence it obtained established that there was reasonable cause to believe a violation of Title VII occurred, and it issued May a "right to sue" letter.

Eventually, May filed suit in the district court alleging that MDOC failed to hire her in violation of Title VII.  MDOC moved for summary judgment on the grounds that May could not establish a prima facie case of discrimination, and that she could not overcome MDOC's legitimate, non-discriminatory rationale for not hiring her.  In response, May moved for partial summary judgment as to MDOC's liability, contending that MDOC could not rebut her prima facie case of discrimination with any lawful rationale for its hiring decision.  Both motions were denied after the district court concluded that there were "genuine issues of material fact which preclude[d] summary judgment or partial summary judgment for either party."  The case then was tried before a jury, but a mistrial was declared when the jury failed to reach a verdict.  A second trial resulted in a verdict in MDOC's favor after the jury deliberated for only thirty-six minutes. Following the jury's verdict, May renewed her earlier motion for judgment as a matter of law, which the district court denied.

On appeal, May essentially raises two claims.  First, she contends that the district court erred in denying her motion for partial summary judgment. Second, she argues that the court erred in denying her motion for judgment as a matter of law.  We address each of her claims in turn.

## II.  DENIAL OF PARTIAL SUMMARY JUDGMENT MOTION

May first argues that the district court erred in denying her motion for partial summary judgment because "there was undisputed evidence that the MDOC's articulated rationale for denying May employment, (i.e., the drug screening results) was illegal on its face."  She asserts that MDOC's drug testing

5

procedures violated Mississippi's employee drug testing statute,[3] and that federal law provides that an "employee's prima facie case of discrimination will be rebutted [only] if the employer articulates *lawful* reasons for the action." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) (emphasis added). According to May, because MDOC provided no lawful reason for its hiring decision, she was entitled to partial summary judgment.

Ordinarily, "an interlocutory order denying summary judgment is not to be reviewed where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits." *Black v. J.I. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994). This rule rests on the notion that "it is particularly difficult to understand how the ends either of justice or of orderly procedure would be furthered were we to hold that the plaintiff is entitled to summary judgment when the facts adduced at the full trial on the merits adequately support the findings and judgment for the defendants." *Id.* at 571 (internal quotation marks and citation omitted). Accordingly, the general rule is that, once trial begins, summary judgment motions effectively become moot. *Id.*

In *Becker v. Tidewater, Inc.*, however, we recognized a narrow exception to this rule. 586 F.3d 358, 365 n.4 (5th Cir. 2009). There, we explained that, following a bench trial, we would review the denial of summary judgment because the district court's ruling on the related motion concerned only an issue of law. *Id.* ("Because [the appellant] appeals the district court's legal conclusions in denying summary judgment, and the case was a bench trial, review of the denials of summary judgment is appropriate."). Underlying our approach in *Becker* was our recognition that, because motions for judgment as a matter of

---

[3] In particular, May submits that McDonald was not qualified to collect the sample; that a second, confirmatory test was not conducted after the first one yielded inconclusive results; and that she was denied employment without a positive confirmed test. *See* Miss. Code Ann. §§ 71-7-1, *et seq.* May also alleges that MDOC's testing methodology did not comply with the department's own policy.

No. 12-60868

law "are not required to be made following a bench trial, it is appropriate to review the court's denial of summary judgment in this context." *Id.*

May relies on *Becker* in arguing that it is proper for us to review the district court's denial of her summary judgment motion because, according to her, the motion was denied solely on the basis of a question of law. In advancing this argument, though, May neglects the posture of the instant case and how it differs from that presented in *Becker*. In particular, unlike *Becker*, this case was not a bench trial, and motions for judgment as a matter of law therefore were required (and made). This case thus is squarely governed by the rule announced in *Black*, wherein we held that it is inappropriate for us to review an interlocutory order denying summary judgment where, after a full trial on the merits, final judgment was entered against the movant.[4] Accordingly, we decline May's invitation to reverse the district court's denial of her motion for partial summary judgment.

## III.  DENIAL OF JMOL MOTION

May next contends that the district court erred in denying her motion for judgment as a matter of law. She argues that, inasmuch as Wilson allegedly directed a racial slur toward her and "falsified" her drug test results, there was

---

[4] Even were we to agree with May that this is an exceptional case subject to the rule announced in *Becker*, because we agree with the district court that genuine issues of material fact precluded partial summary judgment in May's favor, reversal still would not be warranted. May's contention is that MDOC's drug testing procedures violated Mississippi law. Even if we accept the validity of this assertion, May overlooks that the inconclusive drug test was only part of MDOC's rationale for not hiring her. MDOC also asserted before trial that May was not hired because she never completed the interview and screening process, including the interview, and the writing, math, and physical agility tests. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (explaining that a defendant rebuts a presumption of discrimination "by articulating a legitimate, nondiscriminatory reason for its actions"). An applicant's failure to complete an application process may provide a legitimate, nondiscriminatory rationale for a defendant's employment decisions. *See Furgess v. United Parcel Service, Inc.*, No. 3:05-1206, 2006 WL 3192542, at *1 (D.S.C. Nov. 1, 2006) (unpublished); *Hudgens v. Owens-Brockway Glass Container, Inc.*, No. W-93-CA-123, 1994 WL 485827, at *2 (W.D. Tex. Jan. 28, 1994) (unpublished).

"undisputed evidence" of racial discrimination. She also claims that MDOC did not show that May would have been denied employment absent this alleged discriminatory animus. In view of these arguments, May asserts that she was entitled to judgment as a matter of law.

## A. Standard of Review

We review de novo a district court's denial of a motion for judgment as a matter of law. *Porter v. Epps*, 659 F.3d 440, 444 (5th Cir. 2011). "[O]ur standard of review with respect to a jury verdict is," however, "especially deferential." *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir. 2000). "The jury verdict must be upheld unless 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 456 (5th Cir. 2009) (quoting *McBeth v. Carpenter*, 565 F.3d 171, 176 (5th Cir. 2009)). "We consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Brown*, 219 F.3d at 456.

## B. Discussion

"When a full trial on the merits has been conducted, as in this case, our focus is on whether the record contains sufficient evidence to support the jury's finding of no race . . . discrimination—not on the plaintiff's *prima facie* case or the *McDonnell Douglas* framework." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 993 (5th Cir. 2008). Here, the record reveals that there was sufficient evidence to support the jury's verdict that MDOC did not decline to hire May on the basis of her race. Although May asserts that Wilson "falsified" her drug test as a result of racial animus he held toward her, McDonald testified that Wilson had not seen May when he reviewed May's results and concluded that she tested positive for cocaine. Indeed, McDonald had to point May out to Wilson, as there were ten other applicants, including two white females, in the screening room. Moreover, only May testified to hearing Wilson "yell" a racial slur at her, despite

the presence of other applicants and MDOC personnel in the room. Finally, May left the interview and screening facility on the day of the incident without telling any of the numerous MDOC officers with whom she interacted about the content of Wilson's alleged statements.

Even more, it is undisputed that May never completed the entirety of the interview and screening process. As noted, Weathers testified that it was this failure that led to the withdrawal of May's conditional employment offer. Weathers's testimony was substantiated by the letter she sent on October 23, 2007, informing May that her employment offer had been withdrawn due to her "incompletion of the Interview and Screening (I/S) process." Similarly, MDOC's response to May's EEOC charge explained that May was not hired because her drug test was "faulty" and "incomplete," and she did not complete the interview process.

Thus, there was ample evidence for the jury to find that race played no role in MDOC's decision not to hire May. That the jury declined to conclude otherwise does not constitute judicial error. Accordingly, we affirm the district court's denial of May's motion for judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in all respects.