# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30731

United States Court of Appeals
Fifth Circuit

**FILED**

November 10, 2014

Lyle W. Cayce
Clerk

BLESSEY MARINE SERVICES, INCORPORATED,

Plaintiff - Appellant

v.

JEFFBOAT, L.L.C.,

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

WIENER, Circuit Judge:

A district court jury granted the breach of warranty claim of Plaintiff-Appellant Blessey Marine Services, Inc. ("Blessey"), but denied its breach of contract claim. Blessey now appeals the district court's denial of two motions: one for partial summary judgment and the other *in limine*. Blessey's primary claim on appeal is that the district court should have entered judgment as a matter of law against Defendant-Appellee Jeffboat, L.L.C. ("Jeffboat"), once the court found the disputed portion of the contract ambiguous. Blessey also urges that the district court erred by admitting parol and extrinsic evidence. We do not reach the merits of either contention because we conclude that (1) we lack jurisdiction to review the district court's denial of Blessey's motion for

No. 13-30731

partial summary judgment, and (2) Blessey waived its right to challenge the district court's admission of extrinsic evidence.

## I.

## FACTS AND PROCEEDINGS

### A.    Background

Over the course of their twenty-year business relationship, Jeffboat, an inland boat and barge builder located in Indiana, sold more than fifty barges to Blessey, a provider of transport services for goods through inland waterways. In April 2009, Blessey and Jeffboat entered into a contract in which Jeffboat agreed to build a barge for Blessey at a base unit price of $3,325,000 ("Original Contract"). This price was calculated on the assumption that Jeffboat would procure the steel to build the barge at an average cost of $800 per ton, but the price of the barge was subject to some adjustments. Significant to this case, Article III of the Original Contract specified that the adjusted unit price would depend on the "actual average cost per ton . . . for all steel plate and structural steel used in the construction of the barge to be escalated/de-escalated," but in no event would the cost per ton exceed $800 for purposes of calculating the ultimate price.

Jeffboat and Blessey subsequently negotiated for additional barges. In July 2009, they executed a "First Amendment" to the Original Contract, which stated, in relevant part:

> Article III is amended in part to add the additional terms and conditions as follows . . . . [t]he Base Unit Contract Price for each Hot Oil Vessel and the Clean Service Vessel may be adjusted by reason of: 1. The increase or decrease resulting from alterations pursuant to Article V of the Contract, 2. The increase or decrease resulting from changes in taxes pursuant to Article VI of the Contract.

2

That amendment also stated that "[e]xcept for the steel escalation as provided in Article III of the Contract, the terms and conditions of the Contract shall apply to the Hot Oil Vessels and Clean Service Vessel of this Amendment."

Jeffboat maintains that, by virtue of the parties' execution of the Amendment, Blessey elected to purchase additional barges at a "fixed" price of $525 per ton for steel, rather than the "market" price contemplated in the Original Contract. Blessey read the terms differently and sued Jeffboat for breach of contract, insisting that the invoice for the barges did not reflect the de-escalation of the price of steel. (Blessey later added a breach of warranty claim on the grounds that two of the delivered vessels were not fit for their intended use.)

## B.    District court proceedings

Both parties moved for summary judgment on whether the "steel escalation" comprehended in the Amendment applied to the prices of the five barges that Jeffboat sold to Blessey thereunder. Jeffboat took the position that the Amendment unambiguously excluded the steel *de-escalation* provision. Blessey too maintained that the Amendment was unambiguous, but insisted that it was the steel *escalation* provision in the Original Contract that was explicitly excluded by the Amendment. Blessey argued alternatively that if the district court were to find the Amendment ambiguous, it would have to enter judgment against Jeffboat because Indiana law requires that any ambiguity be construed against the drafter. The district court denied both parties' motions for summary judgment, and ruled that "[t]he amended contract's terms are sufficiently ambiguous as to preclude summary judgment for either side, even when considered in light of the extrinsic evidence the parties have presented."

The parties submitted a joint pretrial order that identified contested questions of law, including whether Indiana law compels the entry of judgment

3

against the drafter of an ambiguous contract. Blessey also filed a motion *in limine,* in which it asked the court to exclude parol and extrinsic evidence of the parties' intent, arguing that Indiana law bars such evidence when the contract includes an integration clause. The district court disagreed with Blessey's characterization of Indiana law, concluding that the cases Blessey cited actually compel admitting the evidence, not excluding it. Noting that it had already determined in its summary judgment order that the Amendment was ambiguous, the district court likewise denied Blessey's motion *in limine* on the grounds that "[r]esolution of the ambiguity will require the jury to hear and weigh relevant extrinsic evidence."

Following a three day trial, the jury rejected Blessey's breach of contract claim, but found in favor of Blessey on its breach of warranty claim. Blessey does not appeal any aspect of the jury's verdict; rather, its sole challenge is to the district court's denial of its motions for partial summary judgment and *in limine*.

## II.

## ANALYSIS

### A.    Denial of summary judgment motion

Before reaching the merits of Blessey's appeal, we consider whether we have jurisdiction to review the district court's denial of Blessey's motion for partial summary judgment. The general rule in this Circuit is that "an interlocutory order denying summary judgment is not to be reviewed when final judgment adverse to the movant is rendered on the basis of a full trial on the merits."[1] We recognized a narrow exception to this rule in *Becker v. Tidewater, Inc.*, holding that if the appellant seeks review of "the district

---

[1] *Black v. J.I. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994).

court's legal conclusions in denying summary judgment, *and* the case was a bench trial," we have jurisdiction to review the denial of summary judgment.[2]

Blessey seeks our review of the district court's disposition of a question of law, but its appeal does not fit the *Becker* exception because the district court conducted a jury trial. Although we acknowledge that other circuits will review purely legal issues decided on summary judgment without considering the kind of trial conducted, we are bound by *Becker*.[3]

Neither are we persuaded by the two other theories advanced by Blessey in support of appellate jurisdiction: (1) It is appealing the district court's "repeated misinterpretation" of Indiana law, rather than simply the denial of summary judgment; and, (2) we should excuse its failure to make a Rule 50 motion because the district court denied Jeffboat's Rule 50 motion. First, although the district court might have consistently rejected Blessey's position that Indiana law requires entry of judgment against the known drafter of an ambiguous contract in its pretrial and trial orders, Blessey only seeks our review of that court's denial of its motions for summary judgment and *in limine*. Second, Blessey's contention that we should excuse its failure to make a Rule 50 motion fares no better. Part of our reasoning in *Becker* was that we have jurisdiction over a denial of summary judgment on a purely legal issue, but only when the district court conducted a bench trial, in part "because Rule

---

[2] 586 F.3d 358, 365 n.4 (5th Cir. 2009) (emphasis supplied); *see also May v. Miss. Dep't of Corr.*, 531 F. App'x 464, 468 (5th Cir. 2013) (per curiam) ("Underlying our approach in *Becker* was our recognition that, because motions for judgment as a matter of law are not required to be made following a *bench* trial, it is appropriate to review the court's denial of summary judgment in this context." (emphasis supplied) (internal quotation marks and citation omitted)).

[3] *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) ("[We] are bound by the precedent of previous panels absent an intervening Supreme Court case explicitly or implicitly overruling that prior precedent . . . .").

5

50 motions for judgment as a matter of law are not required following a bench trial."[4]  The inverse of this principle suggests that we would have jurisdiction to hear an appeal of the district court's legal conclusions following a *jury* trial, but only if the party restated its objection in a Rule 50 motion.[5]  In this case, however, Blessey did not make a Rule 50 motion for judgment as a matter of law on the issue it now seeks to appeal.  Accordingly, we will not speculate whether we would have jurisdiction to review a denial of summary judgment if the legal issue were preserved in a Rule 50 motion, regardless of the type of trial conducted – bench or jury.  We merely conclude that, under *Becker*, we do not have jurisdiction to review the district court's denial of Blessey's motion for partial summary judgment.[6]

Furthermore, even if we were to assume *arguendo* that we do have such jurisdiction, we would affirm the district court's denial of partial summary judgment on the merits.  The thrust of Blessey's appeal is that the district court should have entered judgment in its favor once the court determined that the contract language was ambiguous because "Indiana law, unlike the law of many other states, establishes that if a contract is truly ambiguous . . . then it *must* be construed against the drafter (if there is one)."  Although it is true that, as a general rule, Indiana law requires that ambiguous terms be construed against a known drafter, Blessey overreaches in contending that

---

[4] *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 n.4 (5th Cir. 2009) (citing *Colonial Penn Ins. v. Mkt. Planners Ins. Agency, Inc.*, 157 F.3d 1032, 1037 n.3 (5th Cir. 1998)).

[5] The First and Fourth Circuits adhere to this rule.  *See Ji v. Bose Corp.*, 626 F.3d 116, 128 (1st Cir. 2010) ("[O]ur rule is that even legal errors cannot be reviewed unless the challenging party restates its objection in a motion for JMOL."); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1235 (4th Cir. 1995).

[6] *See Becker*, 586 F.3d at 365 n.4.

No. 13-30731

Indiana law contemplates entering judgment against the drafter of an ambiguous contract in every case.[7]

We acknowledge that "Indiana *arguably* applies the rule of construing ambiguities against the drafter more liberally, and the Indiana Supreme Court has *occasionally* applied the rule without considering whether extrinsic evidence would clarify the parties' intent."[8] This does not mean, however, that Indiana law mandates that *every* ambiguous contract be construed against a known drafter, which is Blessey's position. Rather, "[w]hen a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder."[9] Thus, if we had jurisdiction to consider the district court's denial of Blessey's motion for partial summary judgment, we would affirm it.

## B.    Denial of motion *in limine*

Blessey also seeks to appeal the district court's denial of its motion *in limine*, arguing that the court erred in doing so because the Amendment contained the following integration clause: "All prior verbal and written offers relating to this First Amendment are hereby terminated." Blessey submits that, under Indiana law, "[w]hen two parties have made a contract and expressed it in a writing to which they have both assented as the complete and

---

[7] *See Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-578 (Ind. 2013) ("Where contractual language is ambiguous, we generally resolve those ambiguities in favor of the [draftee], but will not do so if such an interpretation fails to harmonize the provisions of a contract as a whole." (citations omitted)).

[8] *See BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 361 (7th Cir. 2009) (emphasis supplied).

[9] *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010) (citation omitted). The district court's jury instruction on the ambiguity question aligned with Indiana law: "If, after considering those additional factors, doubt still remains as to a contract provision's meaning, you should consider that provision against the party that is responsible for drafting the contract or choosing the terms whose meaning is unclear and in favor of the other party."

accurate integration of that contract," extrinsic evidence is not admissible "for the purpose of varying or contradicting the writing."[10]  Jeffboat disputes that this language operates as an integration clause, asserting that its intended purpose is to foreclose any future attempts by Blessey to purchase additional barges under the terms of the Amendment.

We do not need to address the merits of this issue either.  By adducing some of the same extrinsic evidence at trial that it had sought to exclude in its motion *in limine*, Blessey waived its right to challenge the district court's admission of that evidence.[11]  In *Ohler v. United States*, the United States Supreme Court held that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."[12] Not only did it introduce evidence that it now complains the district court erroneously admitted at trial, Blessey also referred to such evidence in its opening statement, advising the jury that "[i]n the negotiations and the e-mails, you'll see references to the same terms and conditions as the original contract; you'll see e-mails that reference firm and fixed prices; you'll see emails that reference barges that were never built."

Although Blessey insists that application of *Ohler* would have placed it in an "untenable" position at trial because its witnesses would not have been able to rely on extrinsic evidence to explain their testimony, this argument

---

[10] *See Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 688 (Ind. 2005).

[11] *See Ohler v. United States*, 529 U.S. 753, 755 (2000); *see also Clarett v. Roberts*, 657 F.3d 664, 671 (7th Cir. 2011) ("The logic of *Ohler* applies with equal force in both criminal and civil cases . . . . We note that every circuit to have addressed the question has applied *Ohler* in civil cases.").

[12] 529 U.S. at 755; *see also United States v. Fluker*, 698 F.3d 988, 998 (7th Cir. 2012); *United States v. Newburn*, 58 F. App'x 358, 358 (9th Cir. 2003) (rejecting challenge when the appellant "registered his objection to the introduction of the images prior to trial, [but] he chose to mention them in his own direct testimony").

No. 13-30731

actually weighs in favor of admission.[13] We are not persuaded by Blessey's contention that Federal Rule of Evidence 103(b) supports holding that its objection was preserved by the filing of its motion *in limine.* The Advisory Notes accompanying the 2000 Amendment to Rule 103 make clear that this rule "*does not* purport to answer whether a party who objects to evidence that the court finds admissible in a definitive ruling, and who then offers the evidence to 'remove the sting' of its anticipated prejudicial effect, thereby waives the right to appeal the trial court's ruling."[14] We conclude that, by introducing extrinsic evidence, Blessey waived its right to appeal the district court's denial of its motion *in limine* to exclude just such evidence.

## III.

## CONCLUSION

The district court's denial of Blessey's motions for partial summary judgment and *in limine* is AFFIRMED.

---

[13] *See Canny v. Dr. Pepper/Seven-Up Bottling Grp.*, 439 F.3d 894, 904 (8th Cir. 2006) (noting that a civil litigant "cannot avoid the consequence of its own trial tactic by arguing it was forced to introduce the evidence during the direct examination . . . to diminish the prejudice").

[14] FED. R. EVID. 103(b) advisory committee's note (emphasis supplied).