■ ALBERT DREISINGER, Respondent, v VICTOR TEGLASI et al., Appellants. [13 NYS3d 432]—

Order, Supreme Court, Bronx County (Norma Ruiz, J.), entered May 30, 2014, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without cost, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint.

The issue in this case is whether defendants are entitled to summary judgment dismissing the complaint, where plaintiff alleges that defendants breached an agreement to refrain from objecting to plaintiff's plans or applications to build a residence on a parcel of land adjacent to defendants' property. The parties also dispute whether defendants had an affirmative obligation to assist plaintiff's proposed construction by executing necessary documents. We find that, because plaintiff failed to demonstrate that defendants' cooperation was required, de-

fendants have not breached the contract and are entitled to summary judgment.

In 2003, the parties each purchased, from the estate of the prior owner, adjacent parcels of real property, located in the Riverdale section of the Bronx, that had been subdivided from a single parcel. Plaintiff acquired an undeveloped portion of the land, and defendants acquired a portion that was already improved with a single-family dwelling.

Before the parties closed on their respective purchases, defendants approached plaintiff about acquiring the rear portion of his lot (the transfer portion). They entered into a written agreement on or about February 13, 2003, pursuant to which defendants would acquire their lot and the transfer portion from the owner, and would bear all costs associated with the necessary applications to government agencies to incorporate the transfer portion into their lot, including obtaining a survey, recording costs, and any transfer tax liability.

Pursuant to paragraph five of the agreement, defendants agreed that they would "forward no objection, directly or indirectly, to any plan, application for approval for the construction of[,] and the construction of a residence" on plaintiff's lot. The parties also agreed, in paragraph nine, to "cooperate fully and execute any documents and take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms of" the agreement.

Plaintiff approached defendants in or around 2005, approximately two years after the closing, and showed defendant Victor Teglasi building plans prepared by an architect. According to plaintiff's deposition testimony, he told Mr. Teglasi that "he should sign whatever papers [plaintiff's] architect needs him to sign." Defendants requested a copy of the architect's plans, but plaintiff refused, stating that defendants "had certain obligations under the agreement" but that plaintiff was not required to provide them with plans. According to plaintiff, defendants refused then and on several subsequent occasions to sign any documents that would enable plaintiff to proceed with the construction. However, the record does not demonstrate that plaintiff presented any documents for defendants to sign, other than an unidentified "waiver."*

The parties' dispute escalated over the next several years, during which time plaintiff threatened legal action and withdrew permission for defendants to use a driveway on his

---

* There is no explanation in the record of what rights plaintiff wanted defendants to waive.

property. Defendants, through their attorney, requested blueprints, but plaintiff did not provide them. In 2010, plaintiff's architect prepared an unsigned letter, which plaintiff understood was forwarded to defendants. The letter, as read into the deposition record, stated that "[t]he proposed residence has been designed to comply with all required zoning bulk regulations" and did not use any of defendants' zoning lot area or affect their future development rights. Although plaintiff could not recall at his deposition the size of his lot or the dimensions of the proposed building, he testified that the structure would be two stories and that his architect advised him that the building was within required limits and did not infringe on defendants' property.

Nonetheless, plaintiff could not confirm whether his plans were ever submitted to or approved by any city agency. He "believe[d]" the plans had been submitted to the Department of Buildings, but was not sure if they had been approved. He did not know whether he had obtained a building permit or filed any documents with the Board of Standards and Appeals or the City. Furthermore, he was unsure whether any applications were filed with any city agency, by his architect or any other professional, for erection of a building on his property.

Plaintiff commenced this action in September 2010, seeking specific enforcement of the parties' agreement and damages for breach of contract and fraud. After answering, defendants served discovery requests seeking copies of the plans. Although no response was received, a note of issue was filed in September 2013.

Defendants moved for summary judgment dismissing the complaint, arguing that they could not have breached the contract because plaintiff had never provided them with any approved plan for defendants' consent. Counsel for defendants represented that he had conducted a Department of Buildings record search and found no application for a new building at plaintiff's property. Defendants argued that they "cannot prevent plaintiff from doing something he has no right to do in the first place," and therefore, there is no "real injury" to plaintiff resulting from any claimed actions by them. Since there is no factual issue requiring trial and no justiciable controversy, defendants argued, the action should be dismissed.

Plaintiff responded that the agreement was clear that, in exchange for plaintiff agreeing to convey a portion of his property to defendants, defendants agreed to cooperate fully, not only by refraining from any objection, but also by affirmatively assisting plaintiff as necessary. He further argued that the

agreement does not require him to provide approved plans, or any other document, for defendants' consent, and that the reason he could not file plans or complete construction was that defendants had refused to sign waivers or cooperate with him.

The court denied defendants' motion, finding that they had failed to meet their initial burden of establishing their entitlement to summary judgment. The court noted that the agreement, which required defendants not to object to plaintiff's construction, "was not contingent upon the plaintiff's presentation of construction plans." Defendants appeal.

Initially, although defendants' arguments on appeal differ from those made in support of their motion, they may be considered by this Court because they present a pure legal issue of contract interpretation, which appears on the face of the record and could not have been avoided if raised below (see *Chateau D' If Corp. v City of New York*, 219 AD2d 205, 209-210 [1st Dept 1996], *lv denied* 88 NY2d 811 [1996]).

"On appeal, the standard of review is for this Court to examine the contract's language de novo" (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 [1st Dept 2008]). "Our function is to apply the meaning intended by the parties, as derived from the language of the contract in question" (*id.*; *see also Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). In interpreting a contract, words should be accorded their "fair and reasonable meaning," and "the aim is a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations" (*Duane Reade, Inc.*, 54 AD3d at 140 [internal quotation marks omitted]; *see also Gessin Elec. Contrs., Inc. v 95 Wall Assoc., LLC*, 74 AD3d 516 [1st Dept 2010]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield*, 98 NY2d at 569). Although the parties offer conflicting interpretations of a contract, that does not render it ambiguous (*see Bethlehem Steel Co. v Turner Constr. Co.*, 2 NY2d 456, 460 [1957]). Moreover, "where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract" (*id.*).

In this case, notwithstanding the parties' conflicting interpretations of defendants' obligations under the contract, the language is unambiguous and the agreement clearly reflects their intent. In essence, the parties agreed that defendants would receive the transfer portion of the property, assume the costs associated with the transfer, and refrain from objecting to

plaintiff's future construction of a residence on his property. Paragraph five evinces the parties' understanding that plaintiff intended to build a residence on his undeveloped parcel.

Defendants correctly assert that paragraph five, read in isolation, creates only a passive obligation to refrain from objecting to plaintiff's plans or applications to construct a residence. However, the contract should be " 'read as a whole' " and " 'interpreted as to give effect to its general purpose' " (*Insurance Corp. of N.Y. v Central Mut. Ins. Co.*, 47 AD3d 469, 471 [1st Dept 2008], quoting *Empire Props. Corp. v Manufacturers Trust Co.*, 288 NY 242, 248 [1942]). Paragraph nine requires the parties to cooperate fully and execute documents as necessary to give effect to the agreement. Although defendants argue that paragraph nine is mere boilerplate language and does not create additional obligations, the provision should not be read as meaningless (*see Yoi-Lee Realty Corp. v 177th St. Realty Assoc.*, 208 AD2d 185, 190 [1st Dept 1995]). Thus, paragraph nine, when read together with paragraph five, and considering the contract as a whole—which reflects the parties' understanding that plaintiff desired to construct a home on his portion of the subdivided property—creates at least some affirmative obligation on the part of defendants to provide their consent to the extent it might be required.

Indeed, even defendants acknowledge that "[f]or certain kinds of construction a neighbor's consent may be required." And, while they argue that the agreement does not require them "to take affirmative steps to assist Plaintiff's development regardless of the negative impacts it might have on their own tax lots," they state that they "were willing to cooperate as long as they were given a basic opportunity to review Plaintiff's construction plans."

Plaintiff has not demonstrated that he was ever required to obtain defendants' consent, so the parties' dispute over the nature of defendants' obligations under the agreement is rendered academic. If defendants' consent is not "necessary or appropriate," then their duty to cooperate pursuant to paragraph nine is not triggered. Plaintiff has not shown by competent evidence that he ever submitted an application to any government agency, or that his plans actually complied with applicable laws and regulations (aside from statements in an unsigned letter by his architect). Nor has he shown that he ever requested defendants to sign any specific documents other than the cryptic "waiver." Thus, defendants could not have breached their agreement not to object to any application or to cooperate in executing necessary documents. Although plaintiff

asserts that he was not required to provide plans to defendants, he was at least required to demonstrate that he needed their consent in order to proceed with the construction. This he has failed to do. As such, there is no issue of fact requiring trial and defendants are entitled to summary judgment. Concur—Acosta, J.P., Saxe, DeGrasse and Richter, JJ.