# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40686

United States Court of Appeals
Fifth Circuit

**FILED**
June 30, 2017

Lyle W. Cayce
Clerk

FELD MOTOR SPORTS, INCORPORATED,

　　　　　Plaintiff - Appellee

v.

TRAXXAS, L.P.,

　　　　　Defendant - Appellant

-------------------------------------------------------------

TRAXXAS, L.P.,

　　　　　Plaintiff

v.

FELD MOTOR SPORTS, INCORPORATED,

　　　　　Defendant

Appeals from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.

CARL E. STEWART, Chief Judge:

Traxxas, LP ("Traxxas") appeals the district court's order rendering judgment in conformity with the jury verdict that found it owed Feld Motor

No. 16-40686

Sports, Inc. ("FMS") additional royalties under a licensing agreement. Traxxas argues that the district court erred in submitting the New York law contract to a jury because the contract is unambiguous. FMS first contends that we lack jurisdiction over the appeal and alternatively that we should uphold the district court's legal conclusion in denying summary judgment. We hold that this court has jurisdiction and AFFIRM.

## I. BACKGROUND

This case pits the maker of radio control ("RC") vehicles against the producer of a monster truck show. Traxxas builds RC vehicles, while FMS owns and promotes a live monster truck show, Monster Jam ("MJ").[1] Traxxas makes a wide range of RC vehicles, including the Stampede line of hobby-grade RC trucks.

In 2010, the parties entered into the Monster Jam Merchandise License Agreement ("the Agreement"). Under the Agreement, Traxxas would produce and sell certain Stampede trucks branded with FMS's MJ intellectual property. The Agreement had a fixed term, running from October 1, 2010 to December 31, 2013. The parties do not dispute that the Agreement covers the base model Stampede, with or without the MJ branding. This base Stampede was the only one sold with MJ-branded variations. The Stampede is a model truck that wholesales for $150. In addition to the standard Stampede truck, Traxxas makes other RC trucks that comprise its Stampede line of products, which it argues are not covered by the Agreement. The Stampede line of RC trucks is distinguishable from other RC vehicle lines Traxxas sells.

Four different RC trucks in the Stampede line are at issue: the Stampede Nitro, the Stampede VXL, the Stampede 4x4, and the Stampede 4x4 VXL.

---

[1] Traxxas is a Texas limited partnership. FMS is a Delaware corporation with its principal place of business in Illinois.

2

No. 16-40686

These premium models are considerably more expensive, wholesaling from anywhere between $220 to over $300. The premium models differ from the base Stampede in power source, parts, design, and method of control. For instance, the Stampede Nitro is liquid-fuel powered, instead of battery powered. Additionally, the Stampede 4x4 and 4x4 VXL were introduced after the parties entered into the Agreement, in 2010 and 2013 respectively.

The Agreement's Licensed Articles and Royalty Rate provisions form the basis of the parties' dispute. Clause 2 defines "Licensed Articles":

> **2. Licensed Articles:** Hobby-grade battery-operated remote control operated monster truck vehicles ("**R/C Vehicle Units**") and monster truck vehicle bodies ("**R/C Bodies**") branded with the **Property**.[2] Licensed Articles shall include a minimum of four (4) different monster truck molds of **R/C bodies** each year, for each year during the Term other than 2010.

Clause 5 sets out the royalties to be paid.

> **5. Royalty Rate:** In determining the number of **Licensed Articles** on which [FMS] will receive royalties, **"Licensed Articles"** shall be deemed to include **all R/C Vehicle Units and R/C Bodies** manufactured with the Stampede chassis and/or Stampede body, **whether or not branded with the Property or "Stampede."**

The Agreement also exempted the first 30,000 "Licensed Articles" sold from royalties. Over the term of the Agreement, Traxxas paid FMS royalties only on the standard Stampede and MJ-branded Stampedes. After the Agreement expired, FMS hired an outside firm to conduct an audit, pursuant to an audit provision in the Agreement. The audit concluded that Traxxas likely owed additional royalties on other Stampede line vehicles that approached $1 million.

---

[2] The Property is defined earlier in the agreement as "[t]he artwork, images and copyrights owned by [FMS] and associated with Monster Jam® and the Monster Jam trucks."

No. 16-40686

## II.  PROCEDURAL HISTORY

Traxxas initiated proceedings by filing suit in Texas state court, seeking a declaratory judgment that it did not owe any additional royalties.  FMS subsequently removed that suit to the Eastern District of Texas.  FMS then filed suit in the Eastern District of Virginia for breach of contract.  Ultimately, the two cases were consolidated in the Eastern District of Texas with FMS as the plaintiff.

The parties filed dueling motions for summary judgment.  Both parties claimed that the Agreement was unambiguous and supported only their respective interpretations.  Traxxas argued that it clearly owed no additional royalties under the plain language of the contract, while FMS insisted that the plain language showed Traxxas owed royalties on the entire Stampede line.  The district court denied both motions, concluding that the contract was ambiguous, and the case proceeded to trial.

After a seven-day trial, the jury found Traxxas owed FMS royalties on the entire Stampede line and awarded FMS all additional royalties it sought.  Traxxas then filed a combined renewed motion for judgment as a matter of law, motion for a new trial, or alternative motion to modify the judgment.  The district court denied Traxxas's motion.  The district court also awarded FMS attorneys' fees and costs in accordance with the contract.

Traxxas appeals.

## III.  DISCUSSION

While Traxxas appeals the district court's determination that the contract was ambiguous, FMS advances two reasons why it alleges that this court should not reach the merits of Traxxas's appeal.  First, FMS avers that this court lacks jurisdiction to hear the appeal.  Second, it argues the invited error doctrine bars Traxxas's claims.  Alternatively, FMS insists that on the

4

No. 16-40686

merits, the Agreement is at least ambiguous and that the district court did not err in submitting the issue to the jury.

## A. Jurisdiction

Our court has an independent duty to examine the basis of its jurisdiction. *Charles v. Atkinson*, 826 F.3d 841, 842 (5th Cir. 2016) (per curiam). In *Blessey Marine Services Inc. v. Jeffboat, L.L.C.*, we recognized the general rule that "an interlocutory order denying summary judgment is not to be reviewed when final judgment adverse to the movant is rendered on the basis of a full trial on the merits." 771 F.3d 894, 897 (5th Cir. 2014) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994)). So far, the Fifth Circuit has recognized only one narrow exception to this rule. *See id.* In *Becker v. Tidewater, Inc.*, this court held that we could review "the district court's legal conclusions in denying summary judgment" but only when "the case was a bench trial." 586 F.3d 358, 365 n.4 (5th Cir. 2009). We reasoned in *Becker* that "because Rule 50[3] motions are not required to be made following a bench trial, it is appropriate to review the court's denial of summary judgment in this context." *Id.*

In *Blessey*, this court acknowledged in dicta that it may "have jurisdiction to hear an appeal of the district court's legal conclusions following a *jury* trial, but only if the party restated its objection in a Rule 50 motion."[4] 771 F.3d at 898. We noted that our reasoning in *Becker* supports this

---

[3] A Rule 50 motion is a motion for judgment as a matter of law in a jury trial. FED. R. CIV. P. 50.

[4] Contrary to this circuit's precedent, seven other circuits have determined that they retain jurisdiction to hear appeals of purely legal issues raised during summary judgment, even without a Rule 50 motion. *See Feld v. Feld*, 688 F.3d 779, 781–82 (D.C. Cir. 2012); *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008); *Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 902–03 (9th Cir. 2004); *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004); *United Techs. Corp. v. Chromallory Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841–42 (10th Cir. 1994).

conclusion because if the reason for the exception is that a bench trial does not require a Rule 50 motion, the inverse of this principle would be that a legal question addressed in a ruling on summary judgment could be reviewed after a jury trial if it was preserved in a Rule 50 motion. *Id.* However, we declined to address this question because the party in *Blessey* never made a Rule 50 motion. *Id.*

With the question now squarely before us, we hold that following a jury trial on the merits, this court has jurisdiction to hear an appeal of the district court's legal conclusions in denying summary judgment, but only if it is sufficiently preserved in a Rule 50 motion. In doing so, we join with the First, Fourth, and Eighth Circuits. *N.Y. Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, 838 (8th Cir. 2014) (rejecting "any 'dichotomy[ ] between a summary judgment denied on factual grounds and one denied on legal grounds [as] both problematic and without merit'" (alterations in original) (quoting *Metro. Life Ins. Co. v. Golden Triangle*, 121 F.3d 351, 355 (8th Cir. 1997))); *Ji v. Bose Corp.*, 626 F.3d 116, 128 (1st Cir. 2010) (holding "that even legal errors cannot be reviewed unless the challenging party restates its objection in a [Rule 50] motion"); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1235 (4th Cir. 1995) (rejecting "the contention that our review should depend on whether the party claims an error of law or an error of fact," and noting that "[s]uch a dichotomy is problematic because all summary judgment decisions are legal decisions in that they do not rest on disputed facts").

Traxxas's Rule 50(a) and renewed Rule 50(b) motion sufficiently preserved its objection to the district court's ruling. While the arguments in Traxxas's motions focus primarily on the sufficiency of the evidence, it noted its "disagree[ment] with the [c]ourt's determination that the License Agreement was ambiguous." It also objected that FMS's competing

No. 16-40686

interpretation of the Agreement was not reasonable so that it "require[d] judgment as a matter of law." The district court addressed its ruling on ambiguity when entertaining Traxxas's renewed Rule 50 motion, stating "[a]s a preliminary matter, the [c]ourt has found the license agreement to be ambiguous." Under these circumstances, Traxxas sufficiently preserved its argument for appellate review. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (stating that "Rule 50(b) is construed liberally" and that the purpose of the rule is to provide notice to the district court and the plaintiff of the defendant's objections); *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) (considering an issue preserved in a Rule 50 motion even though it was "extremely brief and conclusory"); *cf. OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 n.6 (5th Cir. 2016) (holding that an issue was preserved in a Rule 50(a) motion where the party briefly raised the issue and referenced a more extensive discussion in a prior motion for summary judgment).

In sum, we conclude that Traxxas sufficiently preserved its interlocutory legal issue by raising its argument in Rule 50 motions following a jury trial on the merits, and therefore we have jurisdiction to consider Traxxas's appeal.

## B. Invited Error

We further hold that the invited error doctrine does not apply here. FMS claims that the invited error doctrine bars Traxxas from now arguing that the contract is unambiguous because Traxxas approved of the district court's jury instruction regarding the contract's ambiguity. The invited error doctrine prevents a party from complaining of errors that it induced the district court to make. *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 476 (5th Cir. 2015). Once the district court ruled—over Traxxas's objection—that the contract was ambiguous, Traxxas complied with the ruling at trial but repeatedly restated its argument that the contract was unambiguous. *See*

7

No. 16-40686

*Munoz v. State Farm Lloyds of Tex.*, 522 F.3d 568, 573–74 (5th Cir. 2008). Consequently, the invited error doctrine does not apply. *See id.* (holding that the invited error did not apply to a jury instruction where a party "timely objected and was overruled").

## C. Contract Interpretation

Proceeding to the merits, we hold that the district court properly determined that the Agreement was ambiguous. Traxxas raises several arguments in support of its allegation that the Agreement unambiguously establishes that it does not owe additional royalties. First, it urges us to conclude that the terms "the Stampede body" and "the Stampede chassis" clearly refer only to those items on the base model Stampede, not the entire Stampede line. According to Traxxas, "the Stampede chassis" refers to a unique base found only on the standard Stampede, and it includes diagrams to illustrate the difference between the bases and parts of other Stampede models. It also points to differences in stripes, the location of holes for antennas, additional holes for cooling, and different mounts on the chassis to show that the bodies within the line are not all the same. Further, Traxxas focuses on the use of the definite article "the" as a limiting term in the contract. Next, Traxxas insists that FMS's interpretation of the contract is not reasonable because (1) FMS disregards certain provisions in the Agreement and interprets the same terms in separate provisions differently, (2) FMS's interpretation includes models that were not introduced until after the Agreement went into effect, and (3) FMS's interpretation leads to an absurd windfall. Finally, Traxxas argues that canons of interpretation favor its reading of the contract. We are not persuaded by these arguments.

A Rule 50 motion is reviewed de novo, "applying the same standard as the district court." *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 927 (5th Cir. 2006). Interpretation of a contract is a legal question reviewed de

8

No. 16-40686

novo.  *Hoffman v. L & M Arts*, 838 F.3d 568, 581 (5th Cir. 2016); *accord Dreisinger v. Teglasi*, 13 N.Y.S.3d 432, 435 (N.Y. App. Div. 2015).

New York law considers "the question of whether a written contract is ambiguous [as] a question of law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009).  A contract is ambiguous when "its terms are subject to more than one reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015). Language in a contract is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *JA Apparel*, 568 F.3d at 396–97 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)).

A contract is unambiguous when its words "have a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978).  If a court determines that a contract is unambiguous, "its meaning is likewise a question of law for the court to decide." *Id.* at 397.  The court looks only within the four corners of an unambiguous contract to discern its meaning. *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014). "However, where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered.  Where there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *JA Apparel*, 568 F.3d at 397 (citations omitted).

We conclude that the Agreement is ambiguous and worthy of submission to a factfinder.  The terms "the Stampede body" and "the Stampede chassis" do not have on their face "a definite and precise meaning, unattended by danger

of misconception in the purport of [the Agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *See Breed*, 385 N.E.2d at 1282. Although Traxxas offers its understanding of the terms, it never shows that these terms are standardized within "the customs, practices, usages and terminology as generally understood in [its] particular trade or business." *See JA Apparel*, 568 F.3d at 396–97. Instead, these appear to be specific terms for a specific contract. Both parties cite numerous documents, charts, and advertisements to show that custom and usage favors their respective interpretations, but this competing extrinsic evidence is the sort of thing appropriate for a factfinder to weigh and consider, not this court. *See id.* at 397.

Traxxas argues that use of the article "the" limits the scope of the terms "Stampede body" and "Stampede chassis" and supports its narrower interpretation. It notes "that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) (internal quotation marks omitted). Still, after reviewing the full text of the Agreement, we are not persuaded that use of the article "the" in this context forecloses any interpretation of the contract provision other than the one Traxxas advocates. *See Riverside S. Planning Corp. v. CRP/Extell Riververside, L.P.*, 920 N.E.2d 359, 363 (N.Y. 2009) (stating that the court should review the entire contract and that "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby" (quoting *William C. Atwater & Co. v. Panama R.R. Co.*, 159 N.E. 418, 419 (N.Y. 1927))).

Moreover, we conclude that FMS's interpretation of the Agreement is reasonable. *See JA Apparel*, 568 F.3d at 396. For instance, Traxxas claims that it is unreasonable for the Nitro to be included under the Agreement

because it is not battery powered, and the Licensed Articles provision is limited to "[h]obby-grade battery-operated remote control operated monster truck vehicles."    The Royalty Rate provision, however, states that "[i]n determining . . . royalties, 'Licensed Articles' *shall be deemed to include* all R/C Vehicle Units and R/C Bodies manufactured with the Stampede chassis and/or Stampede body, whether or not branded with the Property or 'Stampede'" (emphasis added).    The "shall be deemed to include" language makes it plausible that the Royalty Rate provision covers more vehicles—such as the Nitro—than the Licensed Articles provision.  As such, it is reasonable for the Nitro to be included under the Agreement.  Additionally, the Agreement is silent about whether it covers models in the Stampede line introduced after the Agreement went into effect, so this interpretation is also reasonable.  And while the Agreement is undoubtedly better for FMS with the additional royalties, it does not appear that the extra royalties are so excessive as to render such an interpretation absurd.  *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) ("[A]bsurd results should be avoided." (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003)).  The first 30,000 units sold annually were exempted from the royalty calculation, and Traxxas received a sponsorship credit at certain MJ events under the Agreement, so the Agreement also benefited Traxxas.  Our task is not to determine whether Traxxas's interpretation is better, but only whether FMS's interpretation is also reasonable, s*ee Universal Am. Corp.*, 37 N.E.3d at 80, and we conclude that it is reasonable.

Similarly, application of canons of statutory construction does not favor Traxxas's interpretation of the contract.  "In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Jacobson v. Sassower*, 489 N.E.2d 1283, 1284 (N.Y. 1985).  Although FMS

composed the first draft of the Agreement, it went through multiple revisions, and Traxxas could have objected to or amended the language even though it failed to do so.  Moreover, under New York law, this doctrine is a last resort and applies only when the extrinsic evidence submitted to the factfinder is insufficient to resolve an ambiguity in the contract.  *See Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 341 (S.D.N.Y. 2014) (citing *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985)).  That "a specific contract provision should prevail over a general one," is similarly unhelpful.  *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 179 (2d Cir. 2014).  Traxxas does not point to a narrower provision of the contract; instead, it argues that because its interpretation of the contract is narrower than FMS's, the court should prefer its interpretation.  Finally, "if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts— the inescapable conclusion is that the parties intended the omission." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014).  However, the scope of terms such as "the Stampede body," "the Stampede chassis," and "all R/C vehicle units" is precisely what is at issue.  Additionally, these are specialized terms not readily found in other, similar contracts.  *See id.*  Thus, common canons of statutory construction do not aid Traxxas.

We hold that the district court did not err when it determined that the contract was ambiguous, and thus, the district court properly denied Traxxas's summary judgment and Rule 50 motions.  *See JA Apparel*, 568 F.3d at 396.  Under New York law, the district court appropriately left the interpretation of this ambiguous contract to the jury.  *See id.* at 397.

## IV.  CONCLUSION

For the foregoing reasons, we hold that this court has jurisdiction to hear this appeal and AFFIRM the judgment of the district court.