**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 19-30395

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2020

Lyle W. Cayce
Clerk

GULF ENGINEERING COMPANY, L.L.C.,

     Plaintiff - Appellee

v.

THE DOW CHEMICAL COMPANY,

     Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

After a jury trial, Dow Chemical Company was found liable for breaching a contract it entered with Gulf Engineering Company. On appeal, Dow's claims of error include the district court's failure to enter judgment on the issue of contract ambiguity and the district court's denial of Dow's motion for judgment as a matter of law on damages. We conclude that the contract was not ambiguous. We do not address whether there was evidence of a contract breach as we instead resolve the appeal on the basis that Gulf failed to support its claim of lost profits by any probative evidence. We REVERSE and RENDER.

No. 19-30395

## FACTUAL AND PROCEDURAL BACKGROUND

The Dow Chemical Company is a multinational chemical production corporation with some of its manufacturing operations in Louisiana. For these operations, Dow retains outside contractors to provide nondestructive testing services, which is the process of inspecting, testing, and evaluating materials for potential deficiencies. For over 20 years, Gulf Engineering Company, L.L.C., an outside contractor, provided nondestructive testing services at three of Dow's Louisiana manufacturing sites. During the relevant time, Gulf was one of two nested contractors at Dow, meaning Gulf and another outside contractor reported to Dow daily, and Dow allocated work between Gulf and the other nested contractor.

On May 22, 2014, Dow and Gulf executed a new Agreement for Services ("Agreement"). Article 1, Section 1.1 provided that "[a]s requested by DOW from time to time during the term of this Agreement, [Gulf] shall furnish competent labor and supervision to perform in a workmanlike manner any or all services as described in Exhibit A." Section 6.1 of the Agreement further provided that "no Services are to be performed under this Contract by [Gulf] unless specifically authorized in writing by DOW." The language regarding early termination of the contract was this:

3.1  *Term* - This Contract shall be effective from May 26, 2014 ("Effective Date") and shall remain in effect until September 30, 2018 or until terminated by DOW or [Gulf], as follows:
   (a) DOW or [Gulf] may terminate this Contract for any reason at any time or for no reason upon at least 90 days advance written notice,
   (b) This Contract shall also be terminable upon one (1) day's written notice by DOW if DOW receives written notification of insurance termination under Article XVIII, or
   (c) DOW may terminate this Contract effective immediately upon written notice in the event [Gulf] breaches this

2

No. 19-30395

Contract and the breach remains uncured for 5 days after notice from DOW.

On September 15, 2014, just a few months into the four-year agreement, Dow sent a letter to Gulf providing 90 days' notice that Dow was invoking Section 3.1(a) and terminating the Agreement without cause. The letter stated that the effective termination date was December 9, 2014. The events following Gulf's receipt of the termination letter remain disputed: either due to a forced eviction by Dow, or due to a unilateral decision by Gulf, Gulf almost immediately left the Dow facilities.

Gulf filed suit in federal court based on diversity of citizenship. It sought damages for breach of contract, detrimental reliance, and intentional interference with a business relationship. The district court granted Dow's Rule 12(b)(6) motion and dismissed Gulf's intentional interference claim.

After discovery, Dow moved for a partial summary judgment arguing the Agreement was unambiguous. According to Dow, it was not obligated to use Gulf's services. Consequently, it was "legally impossible" for Dow to breach the Agreement after providing Gulf with 90 days' notice of termination. The district court denied the motion, concluding the 90-day-notice provision was ambiguous, leaving genuine disputes as to material fact to be resolved. A four-day bifurcated jury trial was held.

In the first phase of the trial, the parties presented evidence as to liability. At the close of Gulf's case-in-chief, Dow moved for judgment as a matter of law on all claims. The district court granted the motion as to detrimental reliance and bad faith, but the court denied the motion as to the breach of contract. The jury returned a verdict in Gulf's favor, finding Dow had breached the Agreement.

During the damages phase of the trial, the district court entered a partial summary judgment for Dow on its counterclaim that Gulf had received from

No. 19-30395

Dow a payment that was not owed. At the close of Gulf's presentation of evidence as to damages, Dow moved for judgment as a matter of law, which the court denied. The jury returned a verdict awarding $138,758 to Gulf. The district court deducted from that award the amount of the Dow counterclaim, then entered judgment for Gulf for $74,745.24 plus taxable costs. Dow timely appealed.

## DISCUSSION

Dow argues both that certain questions should not have been presented to the jury, and that once the questions were presented, the jury made findings unsupported by the evidence. The specific arguments are these: (I) the district court erred in failing to find the 90-day termination provision unambiguous, thereby erroneously denying Dow's motion for summary judgment on that issue; also, an improper jury instruction on ambiguity was given; (II) there was no evidence that Dow breached the Agreement, and therefore Dow's motion for judgment as a matter of law should have been granted on the issue of whether Gulf had any authorized work that it was not allowed to complete; and (III) there was no evidence to support the damage award. We address the issues in that order.

## I.    *Contract ambiguity*

On appeal, Dow argues that it was entitled to a partial summary judgment that there was no ambiguity in the 90-day termination provision in the Agreement. Having had its motion for that judgment denied, Dow also argues that the district court's jury instruction on ambiguity was erroneous. We discuss those separately.

4

### A.     Partial Summary Judgment

Dow contends there was error in the district court's denial of its motion for partial summary judgment that, if granted, would have found the termination provisions of the Agreement to be unambiguous.  Because Dow preserved this issue by restating its objection in a Rule 50 motion, we consider the argument that the district court should have granted the motion for partial summary judgment on ambiguity.  *See Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 596 (5th Cir. 2017) (applying the procedural requirements of Federal Rule of Civil Procedure 50 to a denied summary judgment motion).

We review the denial of a motion for summary judgment *de novo* and apply the same standards as the district court.  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).  Interpretation of a contract is a legal question that is also subject to *de novo* review.  *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012)

Dow maintains that Sections 1.1 and 6.1 of the Agreement "obligate Gulf to perform services *in the event* Dow authorizes Gulf to do so *in writing*, but do not impose an obligation on Dow [to] use Gulf's services."  According to Dow, both parties are protected by the provision that allows either one to terminate the Agreement "for any reason at any time or for no reason upon at least 90 days advance written notice."  Dow contends that Section 3.1(a) protects Gulf by "allowing Gulf to complete and get paid for all work that was authorized in writing prior to the termination," and it protects Dow by "ensuring Dow has a contractor at its disposal for 90 days if the contractor terminates the Agreement."

Gulf argues that the Agreement obligates Dow to provide Gulf with work throughout the 90-day period and that Dow's interpretation of Section 3.1(a) would render provisions of the Agreement meaningless.  Gulf relies on the testimony of multiple Dow employees who, Gulf argues, believed Gulf would

continue to work at Dow during the 90-day period to support its assertion that the Agreement is ambiguous.

Under Louisiana statutory law, "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. Interpretation starts with the language of the Agreement. *See Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009) (applying Louisiana law). The words of the Agreement "must be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047. If the words of the Agreement are clear "and lead to no absurd consequences," then no further interpretation is needed to determine the parties' intent. *Id.* art. 2046. "Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous." *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02), 817 So. 2d 69, 75. The intention of a contract is ambiguous when, among other things, its written terms are "susceptible to more than one interpretation." *Id.* Both interpretations, however, must be reasonable. *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 668–69 (5th Cir. 1999) (applying Louisiana law).

In denying Dow's motion for partial summary judgment, the district court held that

> the 90 day notice provision is ambiguous and susceptible to differing interpretations as demonstrated by the equally reasonable interpretations offered by both Dow and Gulf. Further, the Court is not convinced that either party strictly complied with the writing preauthorization requirement set forth in Article 6.1. Indeed, the evidence suggests the parties did not. The Court agrees that Dow was not required to utilize Gulf's services in the 90 day notice period **unless** Gulf was engaged in authorized work that had to be completed. However, this is a disputed issue of material fact.

(bold in original). Although the district court stated that Section 3.1(a) was ambiguous because it was susceptible to differing interpretations, the court later adopted Dow's reading of the provision by finding that "Dow was not required to utilize Gulf's services in the 90 day notice period **unless** Gulf was engaged in authorized work that had to be completed." (bold in original).

Gulf's interpretation of Section 3.1(a) — that Dow was obligated to provide Gulf with work throughout the 90-day period — ignores Section 1.1 of the Agreement. There, Gulf agreed to furnish work "[a]s requested by DOW from time to time during the term of this Agreement." Dow's interpretation of Section 3.1(a) — that for 90 days after notice of termination it has the right but no contracted-for obligation to continue assigning work to Gulf and that Gulf had the right to complete and get paid for any work assigned — is the only reasonable interpretation considering the Agreement as a whole. Certainly, there is nothing explicit in the Agreement that Dow must, for 90 days, continue to provide Gulf with work. Thus, under Section 3.1(a), Dow had the option to provide work during the termination period.

The district court should have granted Dow's motion for partial summary judgment on the issue of ambiguity. We discuss whether prejudice resulted from that error as we evaluate the jury instruction on ambiguity.

B. *Jury instruction on ambiguity*

Dow argues the "district court committed legal error by instructing the jury that Section 3.1(a) was ambiguous." The relevant language is in Jury Instruction 13: "This Court has determined, as a matter of law, that the 90-day termination clause in the Agreement between Gulf Engineering Company, LLC, and The Dow Chemical Company is ambiguous."

We have already held that the relevant contract provisions are not ambiguous. Thus, the language of the instruction compounded the error. Nonetheless, the district court also instructed the jury that under the terms of

No. 19-30395

the Agreement, "Dow was not required to utilize Gulf's services in the 90-day notice period unless Gulf was engaged in authorized work that had to be completed." Whether such an obligation existed is the question that makes ambiguity in Section 3.1(a) relevant. Both parties agree that Gulf was entitled to complete any work that Dow assigned during the 90-day termination period. That means the district court's error in denying Dow's motion for partial summary judgment and the district court's jury instruction on ambiguity was harmless. *See Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014).

## II.  *Evidence of breach of contract*

Dow challenges two rulings by the district court that are relevant to whether there was evidence that Dow breached the Agreement. First, Dow argues the district court abused its discretion by allowing Gulf to present inadmissible hearsay testimony disguised as impeachment testimony. Second, Dow argues the district court erred by not granting Dow's motion for judgment as a matter of law because Gulf failed to prove a breach of the Agreement.

We do not resolve these evidentiary objections because of the combination of there being difficulty with each issue and the irrelevance of the resolution to our ultimate decision. Instead, we turn to whether, even if Dow breached the contract, there was competent evidence offered by Gulf to support an award of damages in any amount.

## III.  *Jury award of damages*

To recover for lost profits, Gulf had to offer evidence of what the authorized work was and what profits it lost for being prevented from completion. After the close of evidence on damages, Dow moved for judgment as a matter of law that no evidence of lost profits was provided to the jury. The

8

district court denied the motion, and the jury awarded $138,758 in lost profits. Dow argues the district court should have granted Dow's motion. In the alternative, Dow argues the evidence does not support a reasonable inference that Gulf sustained that amount of damage.

Louisiana law allows a plaintiff to recover lost profits that are "proven with reasonable certainty and [are not] based on conjecture and speculation." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 448 (5th Cir. 2002). "Damages are measured by the loss sustained by the obligee and the profit which he has been deprived." LA. CIV. CODE ANN. art. 1995. "[T]he plaintiff must show that the loss of profits is more probable than not" and that its claim of lost profits will be supported by more than "mere estimates of loss." *Wasco, Inc. v. Econ. Dev. Unit, Inc.*, 461 So. 2d 1055, 1057 (La. App. 4 Cir., 10/22/84). An award of damages "by a jury is a determination of fact that is entitled to great deference on review." *Trunk v. Med. Ctr. of La. at New Orleans*, 2004-0181, p. 9 (La. 10/19/04), 885 So. 2d 534, 539.

What cannot be disputed from this record is that Dow assigned work to Gulf on a daily or, at times, a weekly basis. The evidence at trial included testimony by Dow's maintenance leader, Chad Naquin, who testified that a computer system would generate work orders that identified which inspections were due. Once a work order was generated, Dow would develop an inspection plan. A Dow planner would then develop a detailed job plan identifying which resources were needed. After jobs were planned, according to Naquin, the jobs would go into Dow's "scheduling backlog." At that point, a Dow scheduler would assess available resources and plan jobs for the daily schedule. Once a job was placed on the daily schedule by the scheduler, the Dow work coordinator would discuss the jobs on the schedule with the contractor. After this discussion, Gulf would be permitted to begin working. According to Naquin, these discussions occurred daily and job packages, *i.e.*, actual written

documents, were distributed to Gulf the morning of an inspection. Similarly, Terry Mackie, a Gulf manager, testified that Dow assigned work to Gulf every Monday by distributing a written schedule and a work package, and Gulf was not allowed to provide any inspection jobs without express prior written authorization.

A Dow manager testified that Gulf had authorized work that was not completed at the time Gulf left Dow facilities. That is all there is to create a jury question of whether any work was assigned to Gulf during the week of its departure. For our purposes, though, we accept that the testimony just managed to cross the line to give jurors enough to find a breach of contract. Gulf then argues that the following constitutes circumstantial evidence that Dow prevented Gulf from completing this work: Gulf did not depart voluntarily; Dow's internal emails expressed a desire to get rid of Gulf as soon as possible; the sudden acceleration of Dow's decision to replace Gulf; a secret meeting held by a Dow manager informing Gulf employees that the Agreement had been terminated; and an unprofessional telephone conversation between a Dow manager and Gulf's CEO.

Even if there are worthwhile inferences to be drawn from the cited evidence, no inference is needed to show that work was assigned on a daily, or, at most, weekly basis. We see no evidence, or even a claim by Gulf, that it was assigned work after all its personnel left the facility, though there certainly is disagreement as to whether Gulf was entitled to more work. We have already rejected that argument and held that Dow had no contractual obligation to continue to assign work during the 90-day termination period. Consequently, there is no basis for jurors to award damages for any week after that first one. We look to the record for whether there is evidence to support any award.

During the damages phase of the trial, Gulf presented three witnesses: Nick Massimini, Gulf's former Chief Financial Officer and owner; Vint

Massimini, Gulf's former Chief Executive Officer and President; and Michele Avery, Gulf's accounting expert. None of these witnesses testified as to the profits Gulf lost during September 15–19, 2014. Neither Nick nor Vint Massimini could identify work that Gulf was authorized to complete during that week. Avery testified that she was not provided with any documentation regarding previously authorized work that existed on those dates.

Clearly, then, Gulf's evidence was not based on the profit that would have been earned on specific assigned work that was started but never completed during that final week. Instead, the evidence was an extrapolation from past profits to show what Gulf would have earned on work Dow allegedly had an obligation to assign but never did. Using that understanding of lost profits, Avery testified that Gulf would have earned $221,805 in profits during the 90-day notice period. To reach that amount, Avery examined the historic revenue that was generated by Gulf's contracts with Dow over a five-year period and then averaged that to a daily amount. She then multiplied that daily amount by a gross profit margin percentage. Avery calculated the lost profits for a 90-day period.

Conversely, Dow's position was that because Gulf provided no evidence of pre-authorized work that Gulf was prevented from completing, Gulf had failed to show there were any lost profits. As a fallback, Dow's expert accepted the premise that there were lost profits over the 90 days but provided a different lost-profit calculation. If Gulf did experience lost profits during the 90-day notice period, Dow's evidence was the loss would be $55,710. Instead of using a five-year period, Dow's expert examined the 12 months immediately prior to the September 2014 notice of termination, then used somewhat different methodology than had Gulf's expert.

The jury awarded Gulf $138,758 in damages. This amount is a precise splitting of the difference between the two parties' lost-profits calculations.

According to Dow, the jury's verdict must mean that jurors decided Dow was required to provide Gulf with work throughout the 90-day notice period, despite the district court's instruction to the contrary, but then the jurors reached a compromise on the amount of damages. That interpretation of the verdict is plausible. What is inescapable is that jurors were at least premising their award on an obligation for Dow to provide additional work for a substantial part of the 90 days.

For purposes of our analysis only, we have assumed that Gulf was entitled to damages for the one week in which there is very slight testimony of work having been assigned but not allowed to be completed. The only evidence of how the details of daily or weekly assignments can be known is that Dow used oral and written communication that included the issuing of work orders and job schedules. What Gulf needed to offer were details about any assigned work. That would include evidence of such variables as the nature of the work, the number of employees needed, and the number of days needed to complete the work. In other words, what was needed in some form was evidence relevant to allow a calculation of what Dow would have paid and what Gulf's expenses would have been, *i.e.*, what Gulf's profit would have been. Instead, the only evidence was an average from an historic time period, where all those variables were blended.

As we explained earlier, the evidence of any assigned work after the notice of termination barely suffices to show liability. For us then to allow the evidence offered of daily-average profits over one or five years to substitute for actual profits for actual assigned work is a bridge too far. We do not "second-guess jurors, so long as there was a legally sufficient evidentiary basis for their verdict." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1045 (5th Cir. 2011). There was no such basis here.

12

No. 19-30395

\* \* \*

We find no prejudice from the district court's denial of Dow's motion for partial summary judgment on the issue of ambiguity.  We REVERSE the district court's denial of Dow's motion for judgment as a matter of law on damages and RENDER judgment in favor of Dow.