2497 Realty Corp. v Fuertes (2022 NY Slip Op 03678)

2497 Realty Corp. v Fuertes

2022 NY Slip Op 03678

Decided on June 07, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 07, 2022

Before: Gische, J.P., Kern, Oing, González, Scarpulla, JJ. 

Index No. 151947/14 Appeal No. 15879-15879A Case No. 2021-01245, 2021-02494 

[*1]2497 Realty Corp., Plaintiff-Appellant,
v
Rodolfo Fuertes, et al., Defendants-Respondents.

Rosenberg & Pittinsky, LLP, New York (Laurence D. Pittinsky of counsel), for appellant.
Lowenstein Sandler LLP, New York (Michael A. Kaplan of counsel), for respondents.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered November 9, 2020, which denied plaintiff's motion to restore the case to the active calendar, unanimously reversed, on the law, and the motion granted. Appeal from orders, same court and Justice, entered January 22, 2021, and February 3, 2021, which denied plaintiff's motion for reargument, unanimously dismissed, without costs, as taken from a nonappealable order, and insofar as the orders denied plaintiff's motion for an evidentiary hearing, unanimously dismissed, without costs, as academic.
In 2007, a petroleum spill was discovered on property owned by plaintiff. The spill was later confirmed to have originated from an adjacent gas station owned and/or controlled by ExxonMobil. Thereafter, nonparty 2497 Holding LLC became the fee simple owner of the property. Simultaneous with the transfer of the property to 2497 Holding, defendant 2497 Partner LLC acquired a 49.9% membership interest in 2497 Holding, with plaintiff retaining the remaining 50.1% membership interest.
In 2010, 2497 Partner entered into an agreement with plaintiff to purchase plaintiff's remaining 50.1% interest in 2497 Holding. Pursuant to that purchase agreement, plaintiff was entitled to all the settlement proceeds paid by ExxonMobil relating to the spill, and assumed responsibility for remediation of the spill and settlement negotiations with ExxonMobil. The parties thereafter amended the purchase agreement to give defendants sole control over remediation of the property and settlement negotiations with ExxonMobil. The amendments also provided for a structured plan pursuant to which defendants were to distribute any settlement proceeds received from ExxonMobil to both defendants and plaintiff.
Plaintiff commenced this action in 2014, alleging that defendants failed to make any distributions to it despite having settled with ExxonMobil and having received the settlement proceeds. By order dated June 9, 2014, the court dismissed the complaint on the ground that the action was premature, and enjoined plaintiff from seeking further judicial relief until remediation of the property was complete, i.e.,"when the Property is remediated to the level set forth in the parties' agreement (i.e., 'highest and best use under applicable zoning laws'), and all stages of the remediation are approved by all relevant federal, state and local authorities."
By letter dated July 21, 2020, plaintiff informed the court that the remediation was completed in accordance with the June 9, 2014 order and sought to vacate the injunction so that it could pursue its claims regarding distribution of the ExxonMobil settlement proceeds. Plaintiff also submitted a New York State Department of Environmental Conservation (NYSDEC) "No Further Action Letter" indicating that no further action was required with respect to the spill, and a report from P.W. Grosser Consulting finding that the "remediation has been performed to the site[']s highest [*2]and best use under applicable zoning laws (Commercial Use)." Plaintiff thereafter moved to restore this action to active status.
Plaintiff's motion should be granted, as plaintiff demonstrated, prima facie, that remediation of the property had been completed in accordance with the June 9, 2014 order. The NYSDEC "No Further Action Letter" and P.W. Grosser Consulting report showed that the property had been remediated to the "highest and best use under applicable zoning laws" and that no further remediation was required, and defendants failed to submit proof rebutting that showing.
Contrary to defendants' contention, the agreement cannot be reasonably interpreted to permit defendants to indefinitely postpone distribution of the ExxonMobil settlement proceeds by unilaterally declaring that the highest and best use of the property is residential, while continuing to lease the property for commercial purposes under a long-term lease. In contract interpretation, all of the terms of the agreement must be given effect and the agreement must be given a fair and reasonable interpretation (see HTRF Ventures, LLC v Permasteelisa N. Am. Corp., 190 AD3d 603, 607 [1st Dept 2021]; Dreisinger v Teglasi, 130 AD3d 524, 527 [1st Dept 2015]; Givati v Air Techniques, Inc., 104 AD3d 644, 645 [2d Dept 2013]).
Here, paragraph 6(a) of the amended purchase agreement grants defendants the authority to "negotiate all aspects of the Remediation, the Settlement Agreement, the recovery from ExxonMobil therefrom . . . in [their] sole discretion" and states their "intent that [the remediation undertaken] shall remediate the Property to its highest and best use under applicable zoning laws, as [they] shall determine in [their] sole and absolute discretion." Paragraph 6(b) requires defendants to distribute "any cash. . . received by [defendants] from ExxonMobil . . . pursuant to the Settlement Agreement or otherwise in respect of the remediation." Giving both of these provisions a fair and reasonable interpretation, defendants had sole control over the remediation and settlement negotiations with ExxonMobil but were obligated to distribute the settlement proceeds upon remediation of the property to its highest and best use under applicable zoning laws. Defendants submitted no evidence rebutting plaintiff's showing that the property had been so remediated.
No appeal lies from the branches of the January 22, 2021 and February 3, 2021 orders denying reargument (see Shwartz v Noll, 191 AD3d 567 [1st Dept 2021]). Plaintiff's appeal from those orders, insofar as they denied an evidentiary hearing, should be dismissed as academic in view of our finding that plaintiff is entitled to restore the case to the active calendar (see Salodkaya v City of New York, 193 AD3d 604, 605 [1st Dept 2021]). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 7, 2022